Dennison v. Christian.

---

## Thomas Dennison v. George M. Christian.[*]

Filed December 7, 1904. No. 13,883.

1. **Extradition.** Section 364 of the criminal code does not authorize the extradition of a person charged with crime against the laws of another state without proof that the person so charged is a fugitive from the justice of the demanding state.

2. **Warrant.** It is not necessary that the warrant issued by the governor of this state upon the requisition of the governor of another state should contain the express statement that the governor has found that the accused is a fugitive from justice. The fact of the issuing of the warrant, upon demand made upon that ground, is sufficient to justify the presumption that the governor so found, until that presumption is overthrown by proof to the contrary.

[*] See *Dennison v. Christian;* 196 U. S. 637. *Judgment affirmed.*

3. **Habeas Corpus:** RETURN. Upon proceedings in habeas corpus to obtain the discharge of one who is held under the governor's warrant in extradition, it is not indispensable that the officer's return to the writ contain direct affirmative allegations of all of the facts upon which the extradition proceedings are based. If the return sets forth the governor's warrant under which the accused is held, and the recitals of the warrant together with the allegations of the application for habeas corpus show facts sufficient to justify the detention of the accused, the return is sufficient.

4. **Requisition:** GOVERNOR'S FINDINGS: QUESTIONS OF LAW. When such requisition is made upon the governor of this state he must determine: First, whether the person demanded is substantially charged with a crime against the laws of the state from whose justice it is alleged he has fled by an indictment or affidavit properly certified; and, second, is he a fugitive from justice from the state demanding him? When it is made substantially to appear to the court in habeas corpus proceedings upon what showing the governor acted, it becomes a question of law for the court to determine whether or not the accused has been substantially charged with a crime against the demanding state.

5. **Review:** EVIDENCE. In determining whether the evidence before the court below was sufficient to support the judgment, this court will not regard errors of the trial court in admitting incompetent evidence if it appear from the whole record that, upon the evidence conceded to be competent, no other conclusion could be reached than the one reached by the trial court.

6. ———: CONSTRUCTION. This court is bound by the construction of the extradition laws adopted by the supreme court of the United States. In view of the language of that court in *Hyatt v. Corkran*, 188 U. S. 691, the courts of this state will not review the decision of the governor in extradition proceedings upon a question of fact made before him, which the law makes it his duty to decide and upon which there was evidence *pro* and *con* before the governor.

7. **Cross-Examination:** ERROR WITHOUT PREJUDICE. When the relator in habeas corpus proceedings gives evidence in his own behalf, the court should not allow him to be cross-examined upon matters not related to his examination in chief, but an error in so doing is without prejudice to the defendant, the trial being to the court itself, when no other judgment than the one entered could have been rendered upon the evidence which is conceded to be proper and competent.

ERROR to the district court for Douglas county: GEORGE
A. DAY, ALEXANDER C. TROUP and WILLIAM A. REDICK,
JUDGES. *Affirmed.*

*W. J. Connell, Smyth & Smith, Cochran & Egan* and
*Thomas C. Munger,* for plaintiff in error.

*H. C. Brome, E. E. Thomas* and *L. W. Fallon, contra.*

SEDGWICK, J.

In April, 1904, the relator, Thomas Dennison, was, by
an indictment of the grand jury of Harrison county, Iowa,
charged with the crime of receiving and aiding in the con-
cealing of stolen property knowing the same to be stolen.
The crime was alleged to have been committed in Novem-
ber, 1892, in Harrison county, Iowa. Upon this indict-
ment, a requisition was issued by the governor of Iowa
upon the governor of this state, upon which a warrant was
issued by the governor of this state for the arrest of the
relator as a fugitive from justice, and for his return to
the state of Iowa for trial. He made application to the
district court for Douglas county for a writ of habeas
corpus, and upon the hearing of that application he was
remanded to the custody of the officers under the gover-
nor's warrant. He prosecutes these proceedings in error
to this court to review that decision. The record shows
that the relator was at the time of the alleged offense a
resident of the city of Omaha, in this state, and that he
has since that time openly and notoriously continued his
residence there. The right of the officers and of the special
agent of the state of Iowa, designated by the governor's
warrant for that purpose, to restrain the relator of his
liberty under the governor's warrant was resisted upon
various grounds; and, among others, it was insisted by
the relator that he was not in the state of Iowa at the
time of the alleged commission of the offense, and was
therefore not a fugitive from the justice of the state of

48

Iowa. Various questions arising out of this contention
are discussed in the briefs and will be hereinafter noticed.
An indictment having been found about 12 years after the
alleged commission of the offense, if the crime had been
committed in this state, the prosecution would be barred
under our statute of limitations; and if the defendant had
resided during this time in the state of Iowa, it would
likewise be barred under their statutes. The manifest
cause of the delay in the prosecution was the failure to
discover sufficient evidence against the defendant to war-
rant it. The defendant's whereabouts during this time
being a matter of public notoriety, if this evidence had
been sooner discovered, the proceedings for extradition
might have been as readily pursued at an earlier date as
at the present time. Nothing was done by the relator in
the meantime which could have hindered such extradition.
Statutes of limitations ordinarily prevent the prosecution
of crimes after so long a period of time has elapsed as to
render it probable that evidence that might vindicate the
accused would be lost or otherwise become unavailable. A
statute of limitations which provided that proceedings
for the extradition of persons charged with crime should,
under circumstances like these, be subject to the same
limitations prescribed for criminal proceedings in ordi-
nary cases would perhaps not be unreasonable. Under
such a statute the authorities of Iowa would have had
the full term prescribed by the statute in which to have
begun these proceedings against this relator. His place
of residence having been notorious, and no concealment
having been attempted, there seems to have been no rea-
son for delay in taking these proceedings that would not
have been of equal force if the defendant had resided in
the state of Iowa, which might have been but a few rods
from his actual residence. It is true that, if a person com-
mits a crime and withdraws himself from the state where
he has committed it, without any thought of fleeing from
justice, but for the purpose of going to his own home, he
is still, within the extradition laws, a fugitive from justice

of the state in which he has committed the crime. This has been frequently determined. It is not contended by relator that the statutes of limitations of the respective states apply to extradition proceedings, nor that one who has become a fugitive from justice may, by lapse of time, under any circumstances, cease to be so regarded; but the foregoing considerations tend to emphasize the necessity of guarding the accused against an unwarranted deportation from the state of his residence.

1. In support of the judgment of the court below it is urged that, in this state, it is not necessary to show that the accused is a fugitive from justice in order to justify his extradition. It is said that our statute provides that one who is charged with having committed a crime in another state may be sent to such state for trial; that the federal legislation upon the subject of extradition is not exclusive, and hence such legislation on the part of our state is valid. There is a dictum of Judge Story's to the effect that the legislation of congress supersedes and prohibits all state legislation upon this subject. *Prigg v. Pennsylvania,* 16 Pet. (U. S.) *539, *617. But the validity of such state legislation, ancillary to and in aid of the act of congress, is now established. See *Ex parte Ammons,* 34 Ohio St. 518; *Ex parte White,* 49 Cal. 433; *Ex parte Romances,* 1 Utah, 23. And such provisions are now found in the laws of many of the states in the Union. The power to arrest and surrender a fugitive from justice, is not dependent upon the constitution, since it existed prior to the adoption of that instrument; it was recognized among the states under the confederation, and, even before the confederation, among the colonies. *Commonwealth of Kentucky v. Dennison,* 24 How. (U. S.) 66, 16 L. ed. 717, 727. It seems to be reasonable to suppose that the state legislatures have power to authorize extradition between the states independently of the provisions of congress upon that subject.

This case was heard below before three judges of the district court sitting together. It appears that they were

not agreed upon the question of the power of the state legislatures, but it would seem that they were agreed in the view that the statute relied upon does not authorize extradition unless the accused is a fugitive from justice. We find in the record an opinion of Judge Redick, who was one of the judges who heard the case below, in which he concludes that the relator could not be held unless he is shown to be a fugitive from justice, and in this part of his opinion the other judges appear to concur. He says:

"Section 364 contains a proviso at the end of the section. The first part of the section provides that no person shall be removed from the state of Nebraska to any other state, a prisoner, for any crime committed within the state of Nebraska. It then provides certain penalties against any persons who are interested and take part in any such removal; Provided, however, that any person who has committed any crime in any other state, where he ought to be tried for that crime, may be sent to that other state, and it is that proviso which it is claimed warrants the extradition, regardless of the question of whether or not he is a fugitive from justice.

"This section 364 contains in the first part an exception, 'Except in cases specially provided for,' that is, no removal shall be had except in cases specially provided for by statute. It first came upon the statute books of this state by an act passed in 1858, approved November 4, and was section 9 of that act, and the exception which I have just read doubtless had reference to cases provided for by another law in existence at that time, and not now upon the statute books, providing that the governor of the state might enter into contracts with the governors of other states for the care of prisoners sentenced by the courts of this state for crimes committed in this state, because at that time there was no adequate provision in this state for taking care of such prisoners, and the exception which I have just read doubtless had reference to that special provision of the law.

"Section 333, which is declaratory of the law of the

United States, authorizes the governor to extradite an accused when he has committed a crime, or stands charged with the commission of a crime in any other state and is a fugitive from justice of that state, because the provision is that, in cases provided for by the constitution and laws of the United States, the governor shall issue his warrant when it is made to appear that the defendant stands charged, etc.   Under that section it must appear that the defendant was a fugitive from justice, otherwise the governor has no power to issue his warrant.   That section I have been unable to find prior to the Revised Statutes of 1866.   No doubt it was passed prior to that time; but it was not in the criminal code of 1858 so-called, or the collation of the criminal laws in 1858, and doubtless was a subsequent enactment to section 364.  Believing that to be true, it probably was intended by this proviso to except or exclude from the prior provisions of that section cases of extradition.   *   *   *   No provision in this state with reference to extradition appears prior to this section 364.  *   *   *   These two laws were incorporated into the revision of 1866, and also that of 1873, and have been continued in the statute books from that time down to the present, and they are two provisions apparently referring to the same subject.   In that case it is the duty of the court to harmonize them if possible.

"Under section 364, when originally enacted, and until the enactment of section 333, there was no method provided by the state for the enforcement of that act—no power granted by the state to the governor to issue his warrant in such cases.   The power was given and the duty imposed, however, by the United States statute.   *   *   * While the existence of these two sections is something of an anomaly in a statute, by construing them together under the ordinary rules in the construction of statutes so that it may be possible that both may stand, we conclude that section 333 is the only one which grants power from the state to the executive to issue his warrant for extradition, and that the effect of that section is to re-

strict his power to such cases as are provided for by the constitution and laws of the United States."

The language of the proviso of section 364 of the criminal code, which is referred to, is:

"*Provided,* That if any citizen of this state. or any person or persons at any time resident in the same, shall have committed, or shall be charged with having committed, any treason, felony, or misdemeanor, in any other part of the United States or territories where he or she ought to be tried for such offense, he, she, or they may be sent to the state or territory having jurisdiction of the offense."

For the reasons stated by the learned district court, we think that this proviso ought not to be construed to provide for extradition in cases not contemplated by the federal statute; but its purpose is rather to so limit the application of section 364 as not to interfere with the legislation of congress on the subject of extradition. No extradition therefore can be allowed unless it appears that the accused is a fugitive from justice.

2. The first contention in relator's brief is that "the warrant and return are insufficient on their face." One ground of this objection seems to be that it does not sufficiently appear upon the face of the papers that the accused is a fugitive from justice. There is annexed to the requisition an affidavit of the prosecuting attorney of Harrison county, Iowa, in which affiant says: "That Tom Dennison, who is charged with the crime of receiving and aiding in the concealing of stolen property committed on or about November 8, 1892, in the county of Harrison, has, since the commission of said crime, actually fled from the state of Iowa, the time of his escape being about November 8, 1892, and that he is now a fugitive from the justice of this state, and I have reason to believe is at Omaha in the state of Nebraska." This was held to be sufficient in *Ex parte Sheldon,* 34 Ohio St. 319, 327. And in *Roberts v. Reilly,* 116 U. S. 80, 29 L. ed. 544, it is said:

"It is conceded that the determination of the fact (that the accused is a fugitive from justice) by the executive of

the state in issuing his warrant of arrest, upon a demand
made on that ground, whether the writ contains a recital
of an express finding to that effect or not, must be re-
garded as sufficient to justify the removal until the pre-
sumption in its favor is overthrown by contrary proof."

It is not necessary that the writ contain an express re-
cital that the governor found that the accused was a fugi-
tive from justice.  The fact of the issuing of the warrant,
upon demand made upon that ground, is sufficient to
justify the presumption that the governor so found, until
that presumption is overthrown by proof to the contrary.

3. The foregoing considerations seem also to answer the
objection that the return of the respondent is insufficient.
This objection seems to be predicated upon the idea that
the return to the writ of habeas corpus must contain di-
rect traversable allegations of all the facts upon which
the extradition proceedings are based.  It is said in the
brief:

"There is no allegation, statement or suggestion that
Governor Cummins or anybody else presented to the
governor of this state any proof whatever that Dennison
had fled from the justice of the state of Iowa; no allega-
tion or statement that Dennison was a fugitive—simply
that the governor demanded him as a fugitive; no state-
ment or allegation that he was charged with crime in the
demanding state, but simply a statement that he was de-
manded by the governor as one charged with crime; no
statement, averment or suggestion that the demanding
governor produced or caused to be produced to the gov-
ernor of this state a copy of an indictment found, or affi-
davit made, before a magistrate, charging Dennison with
having committed a crime; no statement, averment or
suggestion that the executive of Iowa produced or caused
to be produced a copy of an indictment found, or affidavit
made, before a magistrate, charging Dennison with having
committed a crime, either certified or otherwise."

Some of the things above suggested are shown in the
application itself for the writ of habeas corpus.  Others

are recited in the return and in the warrant of the governor which accompanies it. There was annexed to the application for the writ of habeas corpus a copy of the indictment and of the affidavit of the county attorney of Harrison county, Iowa, alleging that the accused is a fugitive from justice. The return to the writ alleged the finding of the indictment by the grand jury of Harrison county, and that thereafter application in due form was made to the governor of the state of Iowa for a requisition upon the governor of the state of Nebraska, upon a showing that said Dennison, after the commission of said crime and upon the 8th day of November, 1892, actually fled from the state of Iowa, and was at the city of Omaha in the state of Nebraska. It was also alleged that the governor of Iowa issued his requisition in due form, and that thereafter the requisition so issued by the governor of the state of Iowa was duly presented to and honored by the governor of the state of Nebraska, and that thereupon the governor of the state of Nebraska issued and delivered to respondent his warrant for the extradition of said Dennison to the state of Iowa. A copy of the warrant is set out in the return, and the recitals thereof are: "Whereas, Albert B. Cummins, governor of the state of Iowa, has demanded of the governor of this state Tom Dennison, charged with the crime of reciving and aiding in the concealing of stolen property, as a fugitive from justice from said state of Iowa, and complied with the requisites in that case made and provided." In *Roberts v. Reilly, supra*, it is held that a decision of the governor as expressed in the warrant "is sufficient to justify the removal (of the accused) until the presumption in its favor is overthrown by contrary proof." In *Hyatt v. Corkran*, 188 U. S. 691, 23 Sup. Ct. Rep. 456, the return to the writ of habeas corpus "was to the effect that the relator was held by virtue of a warrant of the governor of New York, and a copy of it was annexed. * * * No other paper was returned by the chief of police bearing upon his right to detain the relator." The issue was made by the filing of

an affidavit on the part of the relator which traversed this return, and which set up the facts relied upon to show that the extradition of the relator was unwarranted. Authorities cited by relator upon the general rules of code pleading are not applicable. It would seem that the finding by the governor that accused is a fugitive from justice, which finding is sufficiently declared by issuing his warrant, is conclusive, at least so far as to place the burden upon the accused to make it appear that he is not a fugitive from justice. The decisions of the supreme court of the United States upon the subject of extradition between states are binding upon all persons and upon all courts, and there can be no doubt that, under the decisions of that court above referred to, the return to this application was *prima facie* sufficient.

4. Is the judgment of the district court supported by the evidence?

"When a demand of this character is made on the governor of a state, two questions are presented to him: First, is the person demanded substantially charged with a crime against the laws of the state from whose justice it is alleged that he has fled, by an indictment or affidavit properly certified? Second, is he a fugitive from justice from the state demanding him?" *Bruce v. Rayner,* 124 Fed. 481.

When the accused is in custody under the governor's warrant, it is necessary for him, in order to obtain his discharge by the courts upon a writ of habeas corpus, to make it appear, either that he is not "substantially charged with a crime against laws of the state from whose justice it is alleged that he has fled, by an indictment or affidavit properly certified," or that he is not a fugitive from justice from the state demanding him. When it is made properly to appear to the court upon what showing the governor acted, it becomes a question of law for the court to determine whether or not the accused has been substantially charged with a crime against the laws of the demanding state. If the governor's warrant upon which

he is held recites the proceedings had before the governor, from which it appears that the accused was so substantially charged, it would seem from the cases above cited that the presumption is that the proceedings before the governor were regular in that regard. If the original papers described in the recitals of the governor's warrant are before the court, the evidence so furnished will, no doubt, control the recitals of the warrant. If the recitals of the warrant are not sufficient, and the relator in his application for the writ sets out the original papers that were considered by the governor, there can, of course, be no doubt that the court before which the proceedings are pending will consider those original papers in determining whether the relator was charged with a crime against the laws of the demanding state, and whether the requirements of the federal statute in that regard have been met. In this case, it appears from the application for the writ itself that an indictment had been regularly found in the district court for Harrison county, Iowa, charging the relator with the crime for which he is held, and that, pursuant thereto, a request had been made by the authorities of Harrison county of the governor of the state of Iowa for his requisition upon the governor of this state, and that accompanying that request there was evidence that the accused had fled from the state of Iowa and was then in this state. It appears from the recitals of the governor's warrant that a requisition was made upon the governor of this state for the arrest and return of the relator upon the charge which was contained in the indictment, and it is also recited in the warrant that the governor of the state of Iowa in so doing "complied with the requisites in that case made and provided." It is alleged in the return to the writ: "Said requisition so as aforesaid issued by the said governor of the state of Iowa was duly presented to and honored by his excellency, John H. Mickey, governor of the state of Nebraska, and thereupon the governor of the state of Nebraska issued and delivered to respondent his warrant for the extradition

of said Dennison to the state of Iowa." The evidence of the relator fails to show that these papers were not before the governor of this state when his warrant was issued. On the other hand, the evidence in the record clearly shows that all of these papers and proceedings were duly considered by the governor. The relator then failed to make it appear upon the hearing of his application for the writ of habeas corpus that he had not been substantially charged with a crime against the laws of the state demanding him, or that this fact did not sufficiently appear before the governor of this state when he acted upon the requisition. The evidence is therefore sufficient to support the judgment of the district court, unless the relator has made it appear that he was not a fugitive from justice from the state demanding him.

5. Upon the hearing in the district court a large volume of evidence was taken, principally upon .the question whether the accused was a fugitive from justice. Some of this evidence was received against the objection of the relator that it was incompetent to show that the relator was in Iowa at the time of the alleged offense, which was one of the principal questions of fact controverted. An exhibit was offered in evidence which it was claimed was the hotel register of the Kimball House of Davenport, Iowa. Objection was made that no sufficient foundation was laid for its introduction. The objection was overruled, and the evidence received. It is strenuously insisted that the court erred in this ruling. It has been frequently said by this court that the trial court will be presumed to have based its decision on such competent evidence as is introduced before it. And the judgment of the trial court, in matters tried to the court itself, will not be reversed because of errors in receiving incompetent or immaterial evidence, the presumption being that such evidence was disregarded. In this case, however, it appears from a consideration of the whole record that the evidence complained of was not disregarded by the court. Some of the judges who heard the matter appear to have

predicated their judgment, at least in part, upon this evidence. It is plausibly urged that in such case the incompetent evidence must be held to have prejudiced the relator. But this cannot be so if, upon consideration of the competent evidence only, any other decision than the one rendered must have been erroneous. In the following discussion of the sufficiency of the evidence the reasons will be given for the conclusion that no other decision could have been supported upon the evidence which is conceded to be competent.

6. In *Hyatt v. Corkran*, 188 U. S. 691, it was said:

"It must appear to the governor, before he can lawfully comply with the demand for extradition, that the person demanded is substantially charged with a crime against the laws of the state from whose justice he is alleged to have fled, by an indictment or an affidavit, etc., and that the person demanded is a fugitive from the justice of the state the executive authority of which makes the demand. * * * The question whether the person demanded was substantially charged with a crime or not was a question of law and open upon the face of the papers to judicial inquiry upon application for a discharge under the writ of habeas corpus; the question whether the person demanded was a fugitive from the justice of the state was a question of fact which the governor upon whom the demand was made must decide upon such evidence as he might deem satisfactory."

Prior to that decision there had been much controversy and some conflicting decisions in the courts of the several states as to whether the decision of the governor that the accused was a fugitive from justice might be reviewed judicially in proceedings in habeas corpus. In some cases the decision of the governor was thought to be conclusive upon the courts, and in others it seems to have been considered as open to investigation as an original question. In *Hyatt v. Corkran, supra*, it was shown by stipulations upon the record itself that the accused was not in the demanding state at the time of the alleged commission of

the crime charged, and it was held in that case that, when the facts from which it must follow that the accused is not a fugitive from justice "are proved so that there is no dispute in regard to. them," the accused must be discharged. In the opinion this language is used:

"If upon a question of fact, made before the governor, which he ought to decide, there were evidence *pro* and *con*, the courts might not be justified in reviewing the decision of the governor upon such question. In a case like that, where there was some evidence sustaining the finding, the courts might regard the decision of the governor as conclusive."

In *Bruce v. Rayner,* 124 Fed. 481, it was said by the circuit court of appeals of the fourth circuit:

"If conflicting evidence has been submitted to the governor of the state in which the person is found upon the question of fact, and he, considering it, had decided to deliver the person demanded, the presumption being always in favor of the governor's decision, the courts will not inquire into and reverse his decision."

And to support this proposition the above language from *Hyatt v. Corkran, supra,* was quoted by the court. These are the latest expressions of the federal court upon this question that have been brought to our attention. There can be no doubt that this record shows that the question whether the accused was a fugitive from justice was before the governor; that there was sufficient evidence before him to make it appear, at least *prima facie,* that the accused was a fugitive from justice. Under the rule established by the federal courts in the above cases, this was sufficient to justify the remanding of the relator, unless it appeared from the record itself that he was not a fugitive from justice, or was made to appear by such clear and invincible proof that it can be said from the whole evidence that there was no dispute before the governor in regard to the fact. If the facts from which it is to be determined whether the accused is a fugitive from justice are established by the record, or if they are so established by proof

that it may be fairly said that there is no dispute in regard to them, then the question would become a question of law to be determined by the court upon the habeas corpus proceedings, but, if it appear that there was evidence before the governor that was substantially conflicting in regard to the facts upon which this question is to be determined, the responsibility of determining the question rests with the governor.

The relator undertook to prove that he was not in the state of Iowa at the alleged time of the offense charged against him. There is no doubt of the competency of this proof, nor that, if this fact was conclusively shown upon the record, or was so proved that it could be said that there was no substantial dispute in regard to it, it would require the discharge of the accused. To establish this proposition, the relator himself testified that he was in Omaha, Nebraska, from the end of October, 1892, down to the first of January, 1893; that on the night of November 4 he stayed at the Arcade hotel, in Omaha, and that he was not at any time during the period from that time to the first of January following in the state of Iowa. He produced several witnesses who corroborated him in these statements. Although the occurrence was some 12 years before this hearing, these witnesses testified that their attention had been particularly called to the facts at the time, and their testimony was positive that he was not out of the city of Omaha during that time. There are circumstances tending, at least in some degree, to discredit this testimony, and even though there were not, the statements of these witnesses are contradicted by other evidence; and without going into a detailed statement of the evidence that was adduced upon this point, it is sufficient to say that the testimony of these witnesses is not of such a character, in view of the other evidence in the record, as to enable us to say that the matter was established beyond dispute. It seems clear therefore that the evidence upon the hearing in the district court, which is conceded to be competent, shows that all questions of fact necessary

to a determination of the matter were fairly controverted before the governor. That being the case, the rule now established by the federal courts precludes the courts from reviewing those questions upon habeas corpus proceedings. The great delay in beginning the proceedings for extradition, and all facts bearing upon the question whether the accused is a fugitive from justice, would be duly considered by the governor.

Objection was made to the cross-examination of the relator, and it seems that upon this cross-examination matters were inquired into that had no relevancy to the questions being investigated; but, from the view that we take of the effect of the competent evidence in this case, and considering that the evidence was to be weighed by the court itself, we cannot see that any prejudicial error against the relator was committed.

The judgment of the district court was the only one possible upon the evidence before it, and is

AFFIRMED.