PEOPLE ex rel. PAUL A. LA ROCQUE, Relator, *v.* RICHARD E. ENRIGHT, Police Commissioner of the City of New York, Respondent.

(Supreme Court, New York Special Term, April, 1921.)

Extradition — rendition warrant — a mere conflict of evidence upon a hearing under a writ of habeas corpus will not warrant the reversal of the determination of the governor.

> Where a person held under a rendition warrant issued by the governor of this state upon the requisition of the governor of a sister state sues out a writ of habeas corpus, the issue of fact whether the accused was in the demanding state at the time of the commission of the crime charged against him, is not to be determined according to the ordinary preponderance of evidence, and a reversal of the determination of the governor of this state, regularly arrived at, is not warranted because of a mere conflict of evidence upon that issue.
>
> The identity of the prisoner, the fact that the charge of his having deserted his wife was a crime and that the extradition proceedings were regular and legally sufficient, were conceded. The wife of relator testified as to his presence in the demanding state on the particular date laid in the indictment, and the same fact was affirmed in affidavits accompanying the requisition. In addition to his own testimony, to the contrary, relator produced two witnesses, mere casual acquaintances, who testified to relator's continued presence in another state during the week covering the date stated in the indictment. *Held,* that the writ should be dismissed and relator remanded to custody.

HABEAS CORPUS proceedings.

Harry E. Shirk, for relator.

Edward Swann, district attorney (Felix C. Benvenga, of counsel), for respondent.

BIJUR, J.   Relator having been taken into custody under a rendition warrant issued by the governor of this state upon the requisition of the governor of Virginia has sued out a writ of habeas corpus.  He makes no claim that the proceedings are not regular on their face or that the governor of the state of New York was without jurisdiction to issue the warrant, but urges before me only that he is not a fugitive from justice within the meaning of the federal Constitution and United States Revised Statutes, section 5278, because, as he claims, he was not in the state of Virginia on the particular date laid in the indictment, namely, July 13, 1920, on which date he is charged with having deserted his wife.  He has undertaken to prove by his own testimony and that of two disinterested witnesses that during the week of July thirteenth he was continuously present in Atlantic City, N. J.  His wife, on the other hand, has testified that she talked with him in Norfolk, Va., on that day.  It is now urged by relator that the weight of evidence was strongly in his favor and that the writ should be sustained.

The learned district attorney, on the other hand, urges, *first,* that the writ of habeas corpus by its very nature is directed solely to the question whether relator is held by lawful authority, namely, whether the governor had jurisdiction to grant the warrant, and *second,* that if the testimony is to be considered at all, the writ should be dismissed for there was merely the ordinary conflict of evidence before me.

As to the first point, there is no doubt that a writ of habeas corpus cannot be made to perform the function of a writ of error. *Matter of Gregory,* 219 U. S. 210, 213. Its function is to determine "whether the person restrained of his liberty is detained without authority of law." *Harlan* v. *McGourin,* 218 U. S. 442, 445, 446. It is directed to the inquiry whether the court, magistrate or other person upon whose mandate the relator is detained "had jurisdiction of the defendant and of the offense" (*People ex rel. Scharff* v. *Frost,* 198 N. Y. 110, 115); "whether the magistrate * * * had jurisdiction of the offense of the relator and to impose the sentence." *People ex rel. Smith* v. *Van De Carr,* 86 App. Div. 9, 12. It authorizes the inquiry whether "there be some testimony * * * to support the accusation." *Harlan* v. *McGourin, supra; People ex rel. Gill* v. *Warden,* 208 N. Y. 590. See, also, *Frank* v. *Mangum,* 237 U. S. 309, 331; *Williams* v. *Walsh,* 222 id. 415, 422; *Glasgow* v. *Moyer,* 225 id. 420, 428, 429.

As applied to the instant case it is contended by the respondent that my inquiry should be limited to the question whether apart from the regularity of the proceedings generally, which is conceded, there was any evidence before the governor to warrant his conclusion that relator was in Virginia on July 13, 1920. Relator's counsel, however, claims that upon authority of *People ex rel. Genna* v. *McLaughlin,* 145 App. Div. 513, I should decide this issue of fact according to the ordinary rule of the weight of evidence.

In the *Genna* case it appears, at page 515, that the learned judge at Special Term had said: "As a matter of evidence the weight appears to be with the relator; in fact I am convinced that he was not in Illinois at the time the crime is said to have been committed, and that we are in the presence of a case where the

proof of an alibi is complete and satisfactory.'' It is to be noted that two points were made by relator in that case — *first,* that he was not the person named in the indictment, and, *second,* that he was not in Illinois at the time of the commission of the crime. As to the first point, it has, so far as I know, never been questioned but that a mistake in identity is a proper subject for the consideration of the court on habeas pus both by virtue of our statute (Code Crim. Pro. § 827, subd. 2) and generally as matter of law. That question also is one on which the governor of the state of refuge cannot possibly have made any decision, since the identity of the person charged with a crime cannot well be questioned until some one has been taken into custody upon the governor's warrant. It seems to me, therefore, that, apart from any other consideration, the *Genna* case was one in which the proofs demonstrated that the relator was not the person charged with the crime. The learned Appellate Division was, however, of opinion that the Special Term had erred in following *People ex rel. Ryan* v. *Conlin,* 15 Misc. Rep. 303, in which Mr. Justice Beekman sustained the contention now made before me by the learned district attorney. The Appellate Division reviewed a number of cases in the Supreme Court of the United States which intimate plainly that the warrant of the governor is not subject to review on habeas corpus provided there was any evidence before him to sustain a finding that the relator was in the demanding state at the time of the commission of the crime. It also conceded that at least two decisions of the highest state court, namely, *Dennison* v. *Christian,* 72 Neb. 703; affd., 196 U. S. 637, and *Farrell* v. *Hawley,* 78 Conn. 150, had apparently also held to the same effect. It drew the conclusion, however, that the latest decision (at that

14

time) of the Federal Supreme Court, namely, *McNich-
ols* v. *Pease,* 207 U. S. 100, was authority for the
proposition that the question whether the relator was
present in the demanding state at the time of the com-
mission of the crime was not " subject to any other
rule as to its proof (on habeas corpus) than that which
controls the determination of all other questions of
fact at common law. * * * The true rule should be
that this question of jurisdictional fact must be deter-
mined by the court as in any other question of fact
which it has the power and duty to determine, accord-
ing to the rule of the common law as to the preponder-
ance of evidence." The order dismissing the writ was
therefore reversed and the matter remitted to Special
Term for a determination of the question. Since the
decision in the *Genna case,* however, there have been
two decisions of the Federal Supreme Court which
substantially relate its position that the issue of fact
whether the accused was in the demanding state at the
time of the commission of the crime is not to be deter-
mined in the same way as any other question of fact
according to the ordinary preponderance of evidence.
To appreciate the significance of these two cases a
review of the earlier ones is necessary.

In the case most frequently cited (*People ex rel.
Corkran* v. *Hyatt,* 172 N. Y. 176; affd., *sub nom.
Hyatt* v. *Corkran,* 188 U. S. 691) the only question
actually presented was whether the " constructive
presence " of the accused in the demanding state at
the time of the alleged commission of the crime was
sufficient to warrant his being regarded as a " fugitive
from justice." This question of law was decided in
favor of the accused upon a formal concession of the
actual facts and circumstances of his absence from the
demanding state on the various dates involved. The
Federal Supreme Court concludes its opinion with the

words: " We are of opinion that, as the relator showed *without contradiction and upon conceded facts* that he was not within the state of Tennessee at the times stated in the indictments * * * he was not a fugitive from justice within the meaning of the Federal statute upon that subject * * *." The significance of the *Hyatt* case in respect of the point which I am now discussing is expressed by Mr. Justice Peckham (who wrote the *Hyatt* opinion) in *Munsey* v. *Clough,* 196 U. S. 364, 374: " *When it is conceded or when it is so conclusively proved,* that no question can be made that the person was not within the demanding State when the crime is said to have been committed, and his arrest is sought on the ground only of a constructive presence at that time in the demanding State, then the court will discharge the defendant. *Hyatt* v. *Corkran,* 188 U. S. 691, affirming the judgment of the New York Court of Appeals, 172 N. Y. 176. *But the court will not discharge a defendant* arrested under the governor's warrant *where there is merely contradictory evidence* on the subject of presence in or absence from the State, as habeas corpus is not the proper proceeding to try the question of alibi, or any question as to the guilt or innocence of the accused."

In *Ex Parte Reggel,* 114 U. S. 642, the court had said at pages 652, 653, that although the only testimony before the governor of the state of refuge was an affidavit made in the court of the demanding state where the prosecution was pending that Reggel was "a fugitive from justice," that statement was not one merely of a legal conclusion, but that the governor was justified in regarding it as a statement of fact " and as sufficient evidence that appellant had fled from the State in which he stood charged, * * *. *If the determination of that fact by the governor of Utah * * * is subject to judicial review, upon*

*habeas corpus*, the accused, in custody, under his warrant \* \* \* *should not be discharged merely because, in the judgment of the court, the evidence as to his being a fugitive from justice was not as full* as properly might have been required, or because it was so meagre as, perhaps, to admit of a conclusion different from that reached by him.''

In *Roberts* v. *Reilly*, 116 U. S. 80, 95, it is said that '' It must appear, therefore, to the governor of the State \* \* \* *first*, that the person demanded is substantially charged with a crime \* \* \*; and, *second*, that the person demanded is a fugitive from the justice of the State the executive authority of which makes the demand. The first \* \* \* is a question of law \* \* \*. The second is a question of fact, which the governor of the State must decide upon such evidence as he may deem satisfactory. *How far his decision may be reviewed judicially in proceedings in habeas corpus, or whether it is not conclusive are questions not settled* by harmonious judicial decisions nor by any authoritative judgment of this court.''

In *McNichols* v. *Pease*, 207 U. S. 100, the court said, at page 112: '' When a person is held in custody as a fugitive from justice under an extradition warrant, in proper form, and showing upon its face all that is required by law to be shown as a prerequisite to its being issued, he should not be discharged from custody unless it is made *clearly and satisfactorily* to appear that he is not a fugitive from justice within the meaning of the Constitution and laws of the United States.'' This follows the statement on page 109 that '' One arrested and held as a fugitive from justice is entitled of right, upon habeas corpus, to question the lawfulness of his arrest and imprisonment, showing by *competent* evidence \* \* \* that he was not \* \* \* a fugitive from the justice of the demand-

ing State, and thereby overcoming the presumption to the contrary arising from the face of an extradition warrant.''

*McNichols* v. *Pease, supra,* was decided in 1907, the *Genna Case, supra,* in 1911. We have now two later expressions of the opinion of the Federal Supreme Court on this subject. In *Biddinger* v. *Commissioner of Police,* 245 U. S. 128, decided in 1917, Mr. Justice Clarke writes (at pp. 134, 135) : '' The scope and limits of the hearing on *habeas corpus* in such cases has not been, perhaps it should not be, determined with precision. Doubt as to the jurisdiction of the courts to review at all the executive conclusion that the person accused is a fugitive from justice has more than once been stated in the decisions of this court, *Ex parte Reggel,* 114 U. S. 642; *Roberts* v. *Reilly,* 116 U. S. 80; *Appleyard* v. *Massachusetts,* 203 U. S. 222; but the question not being necessary for the disposition of the cases in which it is touched upon, as it is not in this, it is left undecided. This much, however, the decisions of this court make clear; that the proceeding is a summary one, to be kept within narrow bounds, not less for the protection of the liberty of the citizen than in the public interest; that when the extradition papers required by the statute are in the proper form the only evidence sanctioned by this court as admissible on such a hearing is such as *tends* to prove that the accused was not in the demanding State at the time the crime is alleged to have been committed; and, frequently and emphatically, that defenses cannot be entertained on such a hearing, but must be referred for investigation to the trial of the case in the courts of the demanding State.''

Again, in *Hogan* v. *O'Neill,* 255 U. S. 52, the court (by Mr. Justice Pitney) says: '' Whether in fact he (relator) was a fugitive from justice was for the deter-

mination of the Governor of New Jersey * * * this conclusion must stand unless *clearly* overthrown, which appellant has not succeeded in doing.''

It will be observed that, although these extracts express the doubt of the court as to the precise scope and limits of the writ of habeas corpus in the premises, they indicate when interpreted in the light of the previous decisions a doubt only whether the determination of the governor may be reviewed at all, but no doubt as to the repeated declaration of the court that a mere conflict of evidence on habeas corpus will not warrant a reversal of the governor's determination regularly arrived at. The Supreme Court has been manifestly unwilling to declare that under no possible circumstances should the evidence taken before the governor be reviewed. Without considering other reasons, it is plain that our highest judicial tribunal would be unwilling to take an uncompromising position in that respect when we consider that governors of states are not necessarily — indeed are rarely — men trained in the law and that the court may well desire to reserve the right to apply in an appropriate case to the decision of the governor the rule of the municipal law that mere *scintilla* of evidence is no evidence. *Matter of Case,* 214 N. Y. 199.

On the other hand, the only evidence, to quote the language of Mr. Justice Clarke in the *Biddinger* case, '' sanctioned '' by the court as admissible on habeas corpus is such as tends to prove the absence of the accused at the time of the commission of the crime *as opposed to evidence tending to establish his innocence.* This declaration, however, is plainly not intended to detract from the immediately preceding statements in the same opinion concerning the doubt as to the propriety of any review of the executive conclusion, and particularly it does not attempt to

modify the earlier characterization of the necessary nature of such evidence effective, namely, as " admissions," " conclusive " evidence, " clear and satisfactory " evidence, and " competent " evidence. I certainly cannot indulge the view that these phrases are merely casual and were employed inadvertently. They are repeated in form or substance so frequently as to import mature deliberation and therefore to be entitled to be accorded appropriate significance.

In this connection I recall what was aptly said by McKenna, then District Judge, in *Bowdoin College* v. *Merritt,* 63 Fed. Repr. 213, 214, under similar circumstances. In answer to a suggestion that the Supreme Court may have overlooked the question of jurisdiction in *Detroit* v. *Dean,* 106 U. S. 537, he wrote: " But I do not think it reasonable to assume that the point *would have escaped the vigilance and ability of the court* and counsel in a case where jurisdiction was contested."

In addition to the established general rule which limits the inquiry on habeas corpus to the question of jurisdiction, there are other considerations in matters of interstate rendition which emphasize the wisdom of holding substantially to this limitation. Thus it is said in the *Biddinger Case, supra,* at page 133, that the provisions relating to interstate rendition " have not been construed narrowly and technically by the courts as if they were penal laws, but liberally to effect their important purpose. * * * Courts have been free to give this meaning to the Constitution and statutes because in delivering up an accused person to the authorities of a sister State they are not sending him for trial to an alien jurisdiction, * * * with laws which our standards might condemn, but are simply returning him to be tried still under the protection of the Federal Constitution, but in the manner

Supreme Court, April, 1921.    [Vol. 115.

provided by the State against the laws of which it is charged that he has offended."

It is significant, too, that in no one of the leading cases was the accused discharged, except in *Hyatt* v. *Corkran,* in which, as the Supreme Court later said (*Ireland* v. *Woods,* 246 U. S. 323, 329), there was no dispute about the facts.

Although in a number of cases, and particularly in the *Genna Case, supra,* it is suggested that while an alibi of the prisoner as involving his guilt or innocence will not be tried out in habeas corpus, nevertheless, the question whether he was present in the state at the time of the crime should be determined. The nice distinction thus drawn is quite clear as a theory, but as matter of practice we are bound to consider that result would follow from an unqualified and strict application of this rule. While it is true that ordinarily the term alibi is applied to a defense that the accused was not present at the scene of the crime, the same evidentiary effect must necessarily follow, indeed is emphasized, by proof that he was not present even in the state. If the accused be free to litigate on habeas corpus in the usual way this issue, whether it be termed a defense or not, it is clear that the demanding state must necessarily be prepared to meet the issue adequately in order to overcome by preponderance of testimony whatever case the accused may be able to make in that respect. Since, however, the demanding state cannot know in advance what testimony will be tendered on behalf of the accused, no course would be safe other than preparation to present all the affirmative proof touching the presence of the accused at the scene of the crime. In a very large proportion of the cases surely this would mean that the demanding state, however distant from the state of refuge, must practically be prepared to try

its entire case on habeas corpus in order to secure the opportunity to try it again in the criminal proceedings.

In my opinion, therefore, in the instant case the identity of the prisoner, the fact that the charge laid against him is a crime, and the regularity and legal sufficiency of the proceedings before the governor being conceded, a decision by me of the question whether relator was present in Virginia on the date laid in the indictment must at least be controlled by the qualification placed upon the evidence by the Federal Supreme Court. I find that it does not meet this test.

Relator's wife testified that he was present in Norfolk, Va., on July 13, 1920. Affidavits accompanying the requisition were put in evidence in which two parties affirmed the same fact. In addition to the contrary testimony of the relator, he produced two witnesses who testified to his *continuous* presence in Atlantic City during the week covering the date laid in the indictment. In view of the fact that it manifestly was of no possible importance to these two witnesses — mere casual acquaintances — that relator should have been present every day and throughout the whole of each day in Atlantic City, I am unable to yield complete reliance to the accuracy of their recollection on that subject, as it relates to what was to them a mere passing incident occurring over two years ago. Nor can I be oblivious to the fact that although relator testified that he had abandoned Norfolk, Virginia, as his home more than a year and a quarter before the date of the alleged desertion, he registered at the hotel in Atlantic City on the occasion in question as from " Norfolk, Virginia."

Finally, were it necessary, I might advert to the fact that the nature of the crime charged, namely,

Supreme Court, April, 1921. [Vol. 115.

desertion, is such that the exact date charged in the indictment would not necessarily be controlling. *Rinne* v. *Gerber*, 111 Minn. 132; *Strassheim* v. *Daily*, 221 U. S. 280, and generally *Matter of Hoffstot*, 180 Fed. Repr. 240; 218 U. S. 665.

Writ dismissed and relator remanded to custody.