THE PEOPLE OF THE STATE OF NEW YORK ex rel. ROSE PIZZINO, Relator, *v.* ROBERT L. MORAN, Sheriff of the County of Bronx, Respondent.

Supreme Court, Bronx County, September 8, 1930.

*H. Bennett Salomon, Michael N. Delagi* and *Sidney S. Levine,* for the relator.

*Charles B. McLaughlin, District Attorney of Bronx County* [*Herman Fliederblum* of counsel], for the respondent.

McGEEHAN, J.   On August 9, 1930, one Theodore Pizzino was arrested in Bronx county upon a charge that on the 23d day of July, 1930, in the city of Detroit, in the county of Wayne and

State of Michigan, he did feloniously, willfully and of malice aforethought murder one Gerald Buckley.

The Governor of the State of Michigan, pursuant to the provisions of the Constitution and the laws of the United States (U. S. Const. art. IV, § 2; U. S. R. S. § 5278; U. S. Code, tit. 18, § 662), requisitioned the Governor of the State of New York to deliver the prisoner to the authorized agent of the State of Michigan. The Governor of this State issued his rendition warrant.

The relator, the wife of the prisoner, instituted these habeas corpus proceedings to inquire into the cause of his detention. The district attorney of Bronx county made a return to the writ which shows *prima facie* that the warrant of the Governor of the State of New York was issued in extradition proceedings brought by the State of Michigan on the ground that the prisoner is a fugitive from justice charged with the crime of murder. The relator made an oral traverse to such return denying the material allegations thereof and presenting the following issues of law and fact: (1) That the papers upon which the Governor of the State of New York issued his warrant are insufficient and not in accordance with law; (2) that there is no showing of the commission of a crime; and (3) that the prisoner is not a fugitive from justice.

In addition to the documentary evidence, consisting of the writ of habeas corpus, the petition upon which it was issued, the return thereto of the district attorney and the extradition papers, there was extended argument by counsel for the relator and by the district attorney and a full hearing had in open court, at which various witnesses testified on behalf of the prisoner and on behalf of the respondent.

Taking up the grounds upon which the discharge of the prisoner is sought, I find as a matter of law that the extradition papers substantially comply with the Constitution and the laws of the United States and sufficiently charge the prisoner with the commission of a crime in the State of Michigan on July 23, 1930.

The relator claims that the affidavits upon which the Governor of the State of Michigan bases his requisition are not certified by him to be authentic and duly authenticated.

In *Biddinger* v. *Commissioner of Police* (245 U. S. 128), affirming a determination of the District Court of the United States for the Southern District of New York, the Supreme Court of the United States unanimously held that article IV, section 2, of the Constitution intends to provide a summary executive proceeding whereby the States may promptly aid one another in bringing accused persons to trial, and the statute (U. S. R. S. § 5278; U. S. Code, tit. 18, § 662) should be construed liberally to effectuate this purpose.

The court said (pp. 132–133): " Such a provision was necessary to prevent the very general requirement of the state constitutions that persons accused of crime shall be tried in the county or district in which the crime shall have been committed from becoming a shield for the guilty rather than a defense for the innocent, which it was intended to be. Its design was and is, in effect, to eliminate, for this purpose, the boundaries of States, so that each may reach out and bring to speedy trial offenders against its laws from any part of the land. Such being the origin and purpose of these provisions of the Constitution and statutes, they have not been construed narrowly and technically by the courts as if they were penal laws, but liberally to effect their important purpose, with the result that one who leaves the demanding State before prosecution is anticipated or begun, or without knowledge on his part that he has violated any law, or who, having committed a crime in one State, returns to his home in another, is nevertheless decided to be a fugitive from justice within their meaning. [Citing cases.] Courts have been free to give this meaning to the Constitution and statutes because in delivering up an accused person to the authorities of a sister State they are not sending him for trial to an alien jurisdiction, with laws which our standards might condemn, but are simply returning him to be tried, still under the protection of the Federal Constitution but in the manner provided by the State against the laws of which it is charged that he has offended." (See, also, *People ex rel. Marshall* v. *Moore,* 167 App. Div. 479; affd., 217 N. Y. 632.)

The extradition papers do not include a copy of an indictment. Instead there are affidavits, particularly that of one Fred Tara, which the relator contends do not sufficiently show the commission by the prisoner of the crime with which he is charged. As was said in *People ex rel. Gellis* v. *Sheriff* (251 N. Y. 33, 37): " If by any standard of criminal justice that can rationally be supposed to prevail in the demanding jurisdiction the facts set forth state the substance of a charge of crime, the relator [here the prisoner] must be surrendered." Applying that test here the rendition warrant of the Governor of the State of New York appears to have been properly issued.

*People ex rel. Lawrence* v. *Brady* (56 N. Y. 182) and *People ex rel. de Martini* v. *McLaughlin* (243 id. 417), cited by the relator, do not appear sufficient to overcome or even offset the holding of the *Gellis* case. In the *de Martini* case the court said: " The affidavits in this case, when read together, are seen to proceed upon information and belief, though one of them, if read alone, suggests a profession of knowledge that is erroneous and unwarranted. The charges are vague, indefinite and general. They

are made without specification of the sources of information or the grounds of belief." Not so here.

The *Lawrence* case appears to have been limited. (*People ex rel. Hayes* v. *McLaughlin*, 247 N. Y. 238.)

Considering the extradition papers in their entirety, they appear to be full, definite and specific. The first and second grounds advanced by the relator for the discharge of the prisoner have not been sustained.

The remaining ground is that the prisoner is not a fugitive from justice. Seven witnesses called in his behalf testified that on July 23, 1930, the day of the commission of the crime in Detroit, and for several weeks previous to that date, he was in the city of New York. Six of them (the three married couples) said they saw him frequently, at his apartment and their apartments and on the street, from the latter part of June up to July 12 or 13, 1930. They told about a dinner at the prisoner's apartment on the evening of July twenty-second, followed by a social gathering which continued until early the following morning, and of a beach party later in the day at which the prisoner was present. All occupied apartments in the same apartment house or in the immediate vicinity. He was a visitor at their apartments and they in turn visited his apartment. The court will assume that the insurance agent was only an acquaintance. The remaining witness apparently did not know the prisoner personally and gave testimony in corroboration only of that given by one of the other witnesses that did not concern the prisoner personally.

The respondent called six witnesses, four police officers, an assistant manager of the bank where the prisoner had an account, and one (Tara) who testified he saw the defendant on the scene at the time of the commission of the crime. In addition there is the affidavit of one Eva Brown which is made a part of the extradition papers. She avers that on July 22, 1930, she talked to and visited the prisoner from five to six-thirty P. M. in the city of Detroit. Photographs of the prisoner are attached to and made part of her affidavit and also the affidavit of Fred Tara.

This is not a case of mistaken identity. That the prisoner is the person thus referred to and identified appears to be conceded.

The issue raised is that he was not in Detroit on July twenty-second and twenty-third. When he was arrested on August 9, 1930, he said, according to the testimony of Lieutenant Hoffman of the homicide squad of the Detroit police department and that of Detectives Mahony and Kane of the New York city police department, in the presence of the three of them, that he had been living in Detroit from about the first of January this year and returned to New York city about July twenty-sixth. Two days later, when

questioned by Inspector Sweeney at police headquarters, New York city, he said he left Detroit on July twelfth. Neither the relator nor the prisoner testified on the hearing in this proceeding. McNamara, the assistant manager of the Fordham branch of the National City Bank, testified that the prisoner closed out his account in that bank in March, 1930, and did not open it again until August eighth, when he deposited $400 in cash and inquired if he could arrange to transfer some money from his bank in Detroit.

It thus appears that there is conflicting testimony on the question as to whether or not the prisoner was in Detroit at the time the crime was committed. In considering all of the evidence it is to be noted that the three married couples who knew the prisoner only a short time testified they saw him in New York city frequently from the latter part of June to July 23, 1930, whereas the prisoner when questioned by the police said when arrested that he was away from New York city from January to July 26, 1930, and later changed the date to July twelfth. So far as the record shows, he himself never stated that he was in New York from the latter part of June to July 12, 1930.

In a proceeding of this kind the court can only inquire into the questions of whether there is a sufficient charge of a crime, whether the prisoner is the person named in the complaint and warrant and whether he was in the demanding state on that day. No other questions may be raised or considered. It is not the function of the court to inquire into the guilt or innocence of the accused. A conflict of evidence as to where the prisoner was on the day in question will not warrant the reversal by this court of the exercise of executive power by the Governor of this State. (*People ex rel. La Rocque* v. *Enright,* 115 Misc. 206.)

" The burden is upon the prisoner to show that he is not in fact a fugitive from justice, and that burden requires evidence which is practically conclusive." (*Ex parte Montgomery,* 244 Fed. 967, 971.) (See, also, *People ex rel. Fong* v. *Honeck,* 227 App. Div. 436; revd. on other grounds, 253 N. Y. 536, and *People ex rel. Gottschalk* v. *Brown,* 237 id. 483.)

In *Munsey* v. *Clough* (196 U. S. 364) the court said (at p. 375): " But the court will not discharge a defendant arrested under the governor's warrant where there is merely contradictory evidence on the subject of presence in or absence from the State, as *habeas corpus* is not the proper proceeding to try the question of alibi, or any question as to the guilt or innocence of the accused." And in *Biddinger* v. *Commissioner of Police* (*supra,* at p. 135): " This much, however, the decisions of this court make clear; that the proceeding is a summary one, to be kept within narrow bounds, not less for the protection of the liberty of the citizen than in the

public interest; that when the extradition papers required by the statute are in proper form the only evidence sanctioned by this court as admissible on such a hearing is such as tends to prove that the accused was not in the demanding State at the time the crime is alleged to have been committed; and, frequently and emphatically, that defenses cannot be entertained on such a hearing, but must be referred for investigation to the trial of the case in the courts of the demanding State." .

*People ex rel. Genna* v. *McLaughlin* (145 App. Div. 513, 2d Dept.), relied upon by the relator, appears to be contrary to the weight of authority.. Nevertheless, I have considered the question of alibi. Practically all the testimony related to that question. It is important to the prisoner. It is important also to the demanding State. But as the court said in *Ellison* v. *Splain* (261 Fed. 247): " In construing the evidence we are not to be governed by technical rules as in the case of a trial for crime, but to regard it liberally in favor of the demanding state." Whether in fact he was a fugitive from justice was for the determination of the Governor of New York. This conclusion must stand unless clearly overthrown by the relator. (*Hogan* v. *O'Neill*, 255 U. S. 52.) This she has failed to do. The writ is dismissed and the prisoner remanded. Settle order on three days' notice.

The matter of a stay pending the appeal the relator has announced she intends to take will be considered on the settlement of the order. Counsel may if they wish submit memoranda confined to that subject.