In the Matter of JOHN H. CASE, an Incompetent Person. JOHN H. CASE et al., Appellants; MAGGIE L. SHEPPARD et al., Respondents.

Incompetent persons — lack of sagacity in business affairs not sufficient proof that person is incompetent within meaning of statute — evidence in proceeding for appointment of committee examined, and held, insufficient and incompetent.

1. One is not incompetent, within the meaning of the statute, to manage one's affairs because one is lacking in the sagacity that makes for success in business.

2. Insufficient evidence is, in the eye of the law, no evidence, and when it is said that there is no evidence to go to a jury it is not meant literally none, but that there is none that ought reasonably to satisfy a jury that the fact sought to be proved is established. *McDonald* v. *Metropolitan Street Railway Co.* (167 N. Y. 66) holds nothing to the contrary.

3. Evidence in a proceeding to have a person declared incompetent examined, and *held*, that it is inadequate to sustain an order appointing a committee of his estate.

4. Letters of the wife of the alleged incompetent were admitted in evidence in the proceeding, although they had never been read

by him, to show the character of the wife, with whom his sisters, who instituted the proceeding, had quarreled.   *Held*, error.

*Matter of Case*, 162 App. Div. 931, reversed.

(Argued January 5, 1915; decided February 25, 1915.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered April 6, 1914, which affirmed an order of Special Term appointing a committee of the property of an alleged incompetent.

The facts, so far as material, are stated in the opinion.

*Arthur R. Moore* for appellants.   There is no proof to be found in the record of the incompetency of John H. Case.   (L. 1892, ch. 677, § 28; *Matter of Clark*, 175 N. Y. 139.)   The papers and evidence upon which the application was made were insufficient to warrant an order directing a commission to issue.   (*Matter of Fox*, 138 App. Div. 43; *Matter of Burke*, 125 App. Div. 889; *Matter of Vail*, 137 App. Div. 224; *Matter of Morgan*, 7 Paige, 236; *Matter of Shone*, 40 How. Pr. 204; *Matter of Clark*, 175 N. Y. 139.)

*William S. Stearns* for respondents.   The intermediate order directing that a commission issue herein, and submitting the question of competency of the said case to the jury was proper.   (Code Civ. Pro. § 2337; *Matter of Clark*, 175 N. Y. 139; *Matter of Beech*, 23 App. Div. 411; *Matter of Jackson*, 37 Hun, 306.)   The findings and order confirming same are abundantly supported by the record, and, in fact, no other inference could be drawn therefrom.   (*Matter of Williams*, 24 App. Div. 247; 157 N. Y. 704.)

CARDOZO, J.   An order of the Supreme Court has adjudged that John H. Case is an incompetent person, unable to manage his affairs, and has appointed a com-

mittee of his estate. He maintains before us that the order is without evidence to support it. At the time of the hearing he was sixty-six years of age. Two sisters, both his seniors, have set the proceeding in motion. The case against him rests almost solely on their testimony, which has given us a picture of his life. It was passed on the little farm in Fredonia that belonged to his father. He went to school when a boy, but took no interest in books, and had scant education. He helped in the work of the farm, and for that work his scant education seems to have been adequate. There were times when he went forth from the homestead and tried his fortunes elsewhere, but he came back before long to the paternal roof. During his sixty-six years of life there grew up a substantial list of these blighted ventures. Not very imposing do the ventures seem, but the tragedy of their failure makes the chief count in the charge of incapacity, and so they must be chronicled. At successive periods he peddled carpet stretchers, patent medicines and knives; leased a farm and sold vegetables to his neighbors; gave this up to raise poultry; and finally bought a wagon and team and resolved to be a teamster. His projects were obstinately unsuccessful. He could not make a profit out of his vegetables or his poultry, and was sued for the price of his team. About 1879 he gave up these vain endeavors, settled down on his father's farm and helped in the daily work. The years passed without adventure. The father died in 1908 and the mother in 1909. They had expressed the wish that the son should have the homestead; and the daughters, who were married and had separate homes, were heedful of the request. After the mother's death the farm, which made up substantially the entire estate, was divided. Part of the land was quitclaimed by the son to the daughters. The larger part of it, about forty acres, including the homestead, was quitclaimed by the daughters to the son. There was no thought, it seems, at that time, that he

was incompetent to hold it. He lived on the farm without a companion till 1910. In that year he answered an advertisement for a housekeeper, met the advertiser and married her. He did this, it seems, because he wished to have some one to look out for him. His wife quarreled with his sisters and a family feud developed. She showed her disapproval of his relatives by throwing scurrilous letters on their porch. These letters were never read by her husband, but they were received in evidence, under his objection, to show the character of his spouse. He complains, and we think justly, that there was error in this ruling. There were times, indeed, when the proceeding seemed to be a trial, not of the sanity of the husband, but of the conduct of the wife. In justice to her it ought perhaps to be said that she seems to have been to him a thrifty and faithful helpmate. With the growth of the feud the sisters became fearful that the farm might not come to them after their brother's death. They had given him the best part of the land, and had told him, so they say, at the time of the conveyance that it was to be theirs when he died. They urged him, now that he was married, to keep it in the family. They warned him that his wife would try to get his property away from him, and he is said to have expressed a fear that she would do so. He yielded to their solicitation, and made a deed to a trustee, reserving the use of the farm for his own life, with remainder to them upon his death. He found that the trustee's management of the farm was less efficient than his own, and repenting of his conveyance, brought suit against the trustee and his sisters to set it aside. When sued, they reconveyed the property; and at once started this proceeding.

The finding adverse to the appellant rests upon the evidence which we have stated. There is no testimony of any physician that he is incompetent. There is not even the testimony of any layman that his conduct has seemed

irrational. We are asked to infer his incapacity from the record of his life. On his side there is the testimony of two physicians who declare him to be competent. There is the testimony of neighbors, who have dealt with him, and found his conduct normal. The worst that any of them would say against him is that he was not over-sharp in closing a bargain. There is also his own testimony, which reveals intelligence in responding to inquiries, and lifelong habits of economy and industry. Counsel for the petitioners made this concession on the hearing: "We are not claiming that he is an idiot. We are not claiming that he is a lunatic. It is whether he has sufficient intelligence to transact ordinary affairs of business, and deal with his property, sell it, buy it, and invest and reinvest."

We think the evidence is inadequate to sustain the order. Under section 2320 of the Code of Civil Procedure, "the jurisdiction of the Supreme Court extends to the custody of the person and care of the property, of a person incompetent to manage himself or his affairs, in consequence of lunacy, idiocy, habitual drunkenness, or imbecility arising from old age or loss of memory and understanding, or other cause." It is conceded that the appellant is neither a lunatic nor an idiot. It is not claimed that he is intemperate. It has not been proved that he is imbecile. One is not incompetent, within the meaning of the statute, to manage one's affairs because one is lacking in the sagacity that makes for success in business. (*Matter of Clark*, 175 N. Y. 139.) Insecure would be the tenure by which property is held if the evidence in this record could forfeit its control. It is true that where conflicting inferences may not unreasonably be drawn, the weight of evidence is not for consideration in this court. It is still the rule, however, even in this court, that "insufficient evidence is, in the eye of the law, no evidence." (*Pollock* v. *Pollock*, 71 N. Y. 137; 153; *Laidlaw* v. *Sage*, 158 N. Y. 73, 94; *Fealey* v. *Bull*, 163

N. Y. 397, 402.)   In the words of MAULE, J., in *Jewell* v. *Parr* (13 C. B. 916), "When we say that there is no evidence to go to a jury, we do not mean that there is literally none, but that there is none that ought reasonably to satisfy a jury that the fact sought to be proved is established." (Quoted in *Pollock* v. *Pollock* and *Fealey* v. *Bull, supra.*)   Rightly read, the case of *McDonald* v. *Met. St. Ry. Co.* (167 N. Y. 66) holds nothing to the contrary.

The order should be reversed, without costs to either party, and the matter remitted to the Supreme Court for such further proceedings as that court, in the exercise of its discretion, under the provisions of section 2327 of the Code of Civil Procedure, shall deem proper.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, COLLIN, HOGAN and MILLER, JJ., concur.

Ordered accordingly.