ALEXANDER BARBEAU, Appellant, *v.* WALKER D. HINES, as United States Director-General of Railroads, Respondent.

Third Department, July 7, 1921.

Railroads — action to recover for death of plaintiff's horses at railroad crossing — plaintiff failed to hitch horses while loading freight car at night on private siding used by railroad — defendant not under duty to give warning of approach of engine to crossing — negligence not shown — plaintiff guilty of contributory negligence as matter of law — plaintiff's horses not frightened by approach of defendant's engine.

In an action to recover damages for the death of plaintiff's horses it appeared that the plaintiff and his sons were loading hay into a freight car on a private siding which was used by the defendant railroad; that the plaintiff did not hitch or fasten his teams in any way; that at the time of the accident it was dark and the plaintiff had no light; that two of plaintiff's three teams became frightened and ran away and as they were crossing the railroad at a public crossing in close proximity to the freight cars they were struck by one of defendant's engines and three of the horses killed; that said engine was not running on schedule time and no warning of its approach to the crossing was given by the engineer.

*Held,* that though the freight cars and teams were on private property, the defendant was using the side track and the roadway immediately adjoining it for business purposes, and the same rule of law applies as would apply if the side track were actually upon defendant's property;

That the defendant owed no duty to the plaintiff to sound the warning as its engine approached the crossing, especially in view of the fact that the plaintiff was loading the cars in the night time, without lights, and outside the usual working hours;

That the plaintiff did not establish the negligence of the defendant.

Furthermore, the failure of the plaintiff to take the ordinary precaution of hitching or fastening his teams while unloading his sleighs, in view of the circumstances and conditions surrounding the place where he was at work, constituted contributory negligence on his part as a matter of law.

The evidence did not establish the fact that the plaintiff's teams were frightened by defendant's engine as it approached the crossing and cars at which the plaintiff was working.

APPEAL by the plaintiff, Alexander Barbeau, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Clinton on the 17th day of April, 1920, upon the dismissal of the complaint by direction of the court at the close of plaintiff's case, and also from an order, entered in said clerk's office on the same day,

granting defendant's motion for a nonsuit and dismissing plaintiff's complaint, with costs.

*Victor F. Boire*, for the appellant.

*John M. Cantwell* [*E. W. Lawrence* of counsel], for the respondent.

VAN KIRK, J.:

The defendant's railroad at Perry's Mills, Clinton county, N. Y., runs substantially east and west. A side track extends from the main track and south thereof, in a westerly direction, at an acute angle. This side track of late years has been used for the loading of freight and produce. A roadway extends along and adjacent to the side track on its southerly side and joins at its easterly end a highway which crosses the side track and main track but a few feet west of the junction of the two. The plaintiff had sold baled hay to a buyer and three freight cars had been placed by defendant on this side track for shipping the hay. The easterly car stood within about twenty feet of the highway, and the other two cars immediately westerly thereof, with some three or four feet between each two cars. On December 30, 1918, between seven and seven-thirty in the evening, the plaintiff and his two sons had driven to these cars three teams drawing on sleighs baled hay. The teams, when driven to the side of the cars, stood facing westerly, one behind the other. The sleigh drawn by the head team had been unloaded and the team turned back and left standing in the roadway near the east end of the east car, about ten or fifteen feet from the highway leading to the crossing, and faced easterly toward their home, in no way " hitched " or attended. The men were unloading the second sleigh, the father being on the sleigh and the two sons in the car. The horses attached to this sleigh were not hitched, the reins being wound about one of the sleigh stakes. This team suddenly started and ran away, the plaintiff being thrown from the sleigh. They started westerly, but turned soon towards home, ran over a pile of poles and alongside the team left standing near the highway. This team then started and the two teams ran into and along the highway and, as they were crossing the main track, were struck by a locomotive going east, hauling a caboose, causing the damage

complained of.   When the team attached to the sleigh being unloaded started, one son jumped from the car and ran to the head of the horses which had been left standing near the highway.   He had reached the horses and taken hold of their heads before the other team reached them.   As the team he was holding started, they broke from him and ran.   The third team, though in no way restrained, stood still.   Neither the father nor his two sons saw or heard the engine until after the horses started, but they have testified that the horses were frightened by the moving engine and caboose.   In the examination of the plaintiff are these questions and answers: " Q. Was there anything that appeared suddenly or any sound that you heard to frighten the horses?   A. I heard nothing.   Q. Did you see anything?   A. I did not see anything."   The father, one son and a man near the crossing have testified that they heard no whistle for the crossing and no bell rung as the engine passed.   The headlight of the engine was lighted.   Plaintiff says that his horses would stand when a train was passing, if they were spoken to, and that, when unloading straw at this same side track, they had several times stood when untied while the train was passing.   On former occasions when at this side track plaintiff had heard the train whistle for this crossing.   There was no light of any kind at or near the freight cars where plaintiff was working. The distance between the inner rails of the side track and the main track, where the car being loaded was standing, is about thirty-eight and one-half feet.   Defendant claims that the side track at this point is on private property; and there is some evidence that there is a line of old fence posts between the side track and the main track.   The three freight cars on the siding were between the team which ran away and the moving engine.   The engine was not running upon any schedule time.

At the close of plaintiff's evidence a nonsuit was granted, and from the judgment entered thereon this appeal is taken.

The plaintiff claims specifically that the defendant owed to him the duty of giving the usual warning for this public crossing and was negligent because it did not give it.   The plaintiff was rightfully at this side track and the side track was being used by the defendant for placing cars to be loaded

with freight and thereafter hauled by it. Though the freight cars and teams were on private property, the defendant was using the side track and the roadway immediately adjoining it for its business purposes, and we are of opinion that the same rule applies to this case as would apply if the side track were actually upon defendant's property.

If the nonsuit was rightfully granted, though the court, in the brief time available at the trial, has not stated in full the grounds on which it should be granted, the decision will be upheld on appeal.

The rule of duty governing the conduct of the defendant toward the public and the plaintiff is this: to use reasonable prudence, care and caution in running its trains and using its property, so that those who go there for business purposes shall not be unreasonably and unnecessarily exposed to danger. The measure of their duty is reasonable prudence and care under the existing circumstances. (*Vandewater* v. *N. Y. & N. E. R. R. Co.*, 135 N. Y. 583, 588; *Flynn* v. *Central R. R. Co.*, 142 id. 439, 445.) The defendant did not owe to this plaintiff, as one of the public, the duty of giving warning for this public crossing. The plaintiff was not about to use the crossing. The purpose of the rule requiring a suitable and sufficient signal at a crossing is to warn those using or about to use the crossing. (*Vandewater* v. *N. Y. & N. E. R. R. Co.*, *supra; Lampman* v. *N. Y. C. & H. R. R. R. Co.*, 72 App. Div. 363; affd., 179 N. Y. 536; *Harty* v. *Central R. R. Co. of N. J.*, 42 id. 468.) A railroad company is bound to realize that persons are liable to be on the public highway about to cross the tracks, and the rule requiring the defendant to run its trains with proper care and caution requires that a proper warning of the approach of its train to the crossing be given. The question here arises whether, under the rule that a railroad company must run its trains with proper care and caution, it should have given a signal or warning as the engine was approaching these freight cars on the side track. In applying this rule, the usual and customary conditions of railroading operations and the duties which the railroad company owes in carrying out the purposes of its franchise must be kept in mind. No general rule exists requiring a railroad company to give a warning as it approaches a side track, either in or

out of its yards, on which freight cars stand for loading and unloading. There are many private sidings and many small sidings constructed by railroad companies, with the approval of the law, for the accommodation of shippers. There are many places where highways parallel and are in very close proximity to railroad tracks. Ordinary experience teaches that horses on the highway may be frightened by the screech of a whistle or the clang of a bell which would not be frightened, or would be less frightened, by the mere passing of the train. The railroad company is called upon to run its passenger trains at the scheduled speed in order to accommodate the public, and to deliver its freights without unnecessary delay. It is not required that a railroad company should slow down and pass quietly wherever a highway is near its track, but it is required, although a highway may be very near its track, to blow its whistle if this be the proper place to give warning for a public crossing; and, if a horse be frightened by such blowing of the whistle and damage is thereby suffered, an action may not be maintained therefor against the railroad company; in so doing the railroad company is simply using its property within its rights. (*Phillips* v. *N. Y. C. & H. R. R. R. Co.*, 84 Hun, 412, 416.) In that case the whistle which frightened the horses was sounded near an overhead crossing, where the plaintiff was, for a grade crossing a proper distance ahead of the train; on page 416 Mr. Justice DYKMAN said: " The public have no easement in common with the companies except at grade crossings. In other places travelers upon highways must avoid exposure and danger which may result from the sound of moving trains." Common experience shows us that all moving trains make considerable noise. No rule of law holds a railroad company liable for damages resulting from the frightening of horses, unless the owners have rights in the locality, on account of which the railroad company owes them a duty.

In the light of these considerations, what duty did the defendant owe the plaintiff at the time? It was bound to know that the three freight cars were on the side track for the purpose of being loaded. It had placed them there. It was bound to know also that the loading might be in progress at any reasonable business hour; but we cannot think that it

was the duty of the railroad company to add to the noise of the passing engine and caboose by a sounding of the whistle or the ringing of the bell to warn this plaintiff of the approaching engine. The appellant claims that he was relying upon the whistle for this crossing to inform him when he should watch his team. We cannot think that a railroad company was bound to warn a man when its trains come, in order that he may then do what he should have done before; and we cannot think that a railroad company is bound to sound its whistle or ring its bell at the many places along its tracks approaching sidings, which can accommodate but few cars, at the risk of frightening horses which may be upon property adjoining its tracks, or upon highways in close proximity to its tracks; and especially do we think this is true with reference to this plaintiff, who was loading these cars in the night time, without lights, and outside the usual working hours. Negligence of defendant was not shown.

Did plaintiff's negligence contribute to his loss? He was acquainted with the existing conditions above recited. He must be charged with knowledge that the defendant could run its engine upon its track at any time; and it is a matter of common knowledge that there are not only regular trains, but necessarily trains and engines run one way and the other upon no schedule time. He knew that horses left unrestrained are liable to run away, and this is a matter of such common knowledge that negligence is attributed to a man if he leaves his horse unhitched or unattended in a street or public place. The measure of his duty is the same as the measure of the duty of the railroad company, reasonable prudence and care. Contributory negligence is generally a question of fact for the jury, but where it clearly appears from the circumstances, or is proved by uncontradicted evidence, that the party injured has by his own acts or neglect contributed to the injury, the question is one for the court. (*Kettle* v. *Turl*, 162 N. Y. 255, 258; *Henavie* v. *N. Y. C. & H. R. R. R. Co.*, 166 id. 280, 285.) There is in this case no reasonable evidence of any care on the part of the plaintiff, but there is proof of his neglect. He could readily have tied his team that first ran, and he realized the danger of not tying them; but he neglected to hitch or restrain them in any way. The evidence shows that the second

team ran only when the team which first started came up to them and frightened them. If the passing engine and caboose were the cause of the plaintiff's damage, we think no inference can be drawn from the proof other than that his own negligence contributed to his damage.

The evidence does not show that the engine and caboose frightened the team which first ran. The plaintiff and his sons say that they had not heard the train when the team started, nor had they seen anything to indicate its approach, but the team did start and ran some distance, starting west and turning and going back east, and they had reached the railroad crossing, some eighty or one hundred feet from the place where they were standing, at the same time that the engine reached it. Also the evidence shows that, being at this middle car and the car to the west being some forty feet long, and the side track diverging from the main track, a person, or a horse, at the middle car would have to be some ten or twelve feet from the side of the car in order to see the engine coming from the west. The speed of the engine is not disclosed in the record, but it killed three horses and was going fast enough to run a considerable distance beyond the place of the accident before it was stopped. So that, after the horses started, the engine must have run a considerably longer distance towards the crossing than the horses ran to reach this crossing. The plaintiff has said that it was the engine which frightened the horses, but his evidence discloses that this is his inference and not his knowledge, because he had not seen or heard the engine at the time. The second team which ran was frightened by the first, and the third team was not frightened at all. There may have been many things which could frighten the team other than the approaching engine. It was an essential part of plaintiff's case to show that it was defendant's act or omission which caused the damage. We think there was insufficient evidence to enable a jury, with any certainty stronger than a guess or conjecture, to find that the engine frightened the team. Insufficient evidence is no evidence. (*Matter of Case*, 214 N. Y. 199.)

The judgment should be affirmed, with costs.

Judgment unanimously affirmed, with costs.