In the Matter of the Estate of MARGARET ZIMMERMAN, Also Known as MAGGIE ZIMMERMAN, Deceased.

Supreme Court, Erie County, July 18, 1936.

*Herbert A. Zimmerman,* for the proponent, Marine Trust Company of Buffalo.

*John K. Gerken,* special guardian for infant Zimmerman.

*Walter F. Hopkeins* [*Clark H. Hammond* and *Morris Goldstein* of counsel], for the estate of Emma Ware Zimmerman.

*Howard P. Nagle, Harold V. Cook* and *Knoell & Bassett* [*Clayton M. Smith* of counsel], for the contestants.

HARRIS, J. On the trial of this proceeding there was presented to the jury for answer the following four questions, each of which questions was answered by the jury in the manner set forth after the statement of the question:

1. Was the said paper writing duly executed and published as the last will and testament of said Margaret Zimmerman, deceased, as required by law? Yes.

2. Was the said Margaret Zimmerman, deceased, at the time of making said alleged will, of sound mind and memory, and capable of making a will? Yes.

3. Was the execution of the said alleged will of Margaret Zimmerman, deceased, obtained by undue influence? Yes.

4. Was the execution of said alleged will of Margaret Zimmerman, deceased, obtained through fraud and deceit? No.

This is a motion made by persons interested in establishing the probate of the instrument to set aside the jury verdict in so far as such verdict answered question No. 3 in the affirmative. No motion has been made to set aside the answers to any of the other questions. The finding of the jury in reference to question No. 3 is attacked on three different grounds, which are as follows: (1) That certain jurors did not comprehend the legal results that would follow the finding as made by the jury; (2) that the court should not have permitted one Carlisle R. Cherry to testify, the alleged objection to his testimony being that it was received in violation of the provisions of section 347 of the Civil Practice Act; (3) that the finding of the jury in reference to question No. 3 was against the weight of evidence and that there was no evidence to sustain such finding on the part of the jury.

In reference to the ground first above enumerated, the proponent produces before the court the affidavits of five jurors, the contents of each of which affidavits in effect state that the juror affiant did not understand the bearing of question No. 3 on the general question of probate and that he would not have made such a finding if he had understood its effect on the probate.

In reply to such affidavits, the contestants produce affidavits of the other jurors, each of whom in his affidavit states, in substance, that all the jurors understood the testimony and its effect

and that the answer was reached after careful deliberation of the jury. The proponent concedes its knowledge of the well-known rule of law that affidavits of jurors may not be used to impeach the verdict of the jury, but seeks to have the five affidavits produced by it considered by the court in passing upon the question of the weight of evidence.

The court is of the opinion that the use of such affidavits even for that purpose would be a use of them to impeach the verdict of the jury and that none of the affidavits of the jurors as to what occurred in the jury room in reference to deciding the questions at issue are admissible for use on this motion. Therefore, the court does not consider any of the affidavits of any of the jurors or any of the contents thereof in disposing of this motion now before the court.

The admissibility of the testimony of the witness Carlisle R. Cherry is attacked on the ground that he had such an interest in the event that such testimony was inadmissible. (Civ. Prac. Act, § 347.) The facts concerning the said witness Cherry and his testimony are as follows: He was a blood relative of the decedent. He testified on behalf of the contestants as to certain facts from which the said contestants desired to have the jury deduce: (1) That the decedent at the time of the making of the alleged last will and testament (in 1933) lacked sufficient legal mentality to make a last will and testament; (2) as to certain statements of the decedent that showed that she was under the control of the draftsman of the will; (3) that the draftsman of the will made certain admissions against his own interests to the said Cherry. The draftsman of the will and one of the chief beneficiaries thereunder was Herbert A. Zimmerman. He was also a blood relative of the decedent. Under the purported will which is the subject of this proceeding the said Cherry was left a legacy of $4,000. Under a previous alleged will which was drawn and executed by the decedent in 1928 the said Cherry was a beneficiary to the amount of $2,000. If neither of these two alleged wills was admitted to probate, then due to the existence of other living relatives nearer in blood to the decedent, the said Cherry would not succeed to any interest in the estate.

On the trial it was apparent that all of the parties to this proceeding were agreed that there could be no ground of attack on the alleged 1928 will except that if the 1933 will (the one under consideration in this proceeding) were admitted to probate, then the alleged 1928 will would not be of any value in conveying rights to property. The question of moment in reference to the testimony of said witness Cherry is, " Was he testifying to transactions with

the decedent while he himself was interested in the event? " As he was named as a beneficiary in the alleged 1933 will, there is no doubt that in a certain sense he was interested in the probate or rejection of such alleged 1933 will because, by its probate, he would have a legacy of $4,000 and by its rejection he would probably become the beneficiary of the $2,000 legacy willed to him in the alleged 1928 will. The proponent claims that his testimony should not have been received because he would have either won or lost on the decision of the jury.

Much has been written on the subject of the use of the phrases " in his own behalf " and " interested in the event," as used in section 347 of the Civil Practice Act. After an examination of the cases and comment thereon and a consideration of the law as it apparently exists, this court is of the opinion that in order that a witness' testimony should be excluded under section 347 of the Civil Practice Act, such witness should be in the position of making a financial gain for himself in event that the jury believed his testimony. (*Harrington* v. *Schiller*, 231 N. Y. 278, at p. 285; *Matter of Meltzer*, 244 App. Div. 847. See Ford Evidence, vol. 4, § 509 of the cases therein cited.) With this construction of section 347 in mind, the court is of the opinion that it did not err in receiving the testimony of the said Carlisle R. Cherry.

We now come to the question as to whether the finding of the jury in regard to question No. 3 was against the weight of evidence or whether there was sufficient evidence to sustain such finding. On this question it is to be noted that the question, the answer to which is now under discussion, was one of four questions submitted to the jury. The jury in answering the other three questions has found that (a) the factum of the alleged last will and testament has been properly and fully established; (b) that at the time of the execution of such alleged will, the decedent was in a mental state proper to the legal execution of the alleged will by her, and (c) that no fraud or subterfuge was used in securing her execution of the instrument. On each one of these questions there was proof from which the jury could find adversely to the finding which it did make and if it had so found there would be no ground for setting aside the jury's finding. In submitting the four questions to the jury, the court was reluctant to submit question No. 3 because at that time the court felt that in so far as that question stood alone, its affirmative answer would probably be based on suspicion except if the jury found favorably to the contestants on the other questions. The jury has made findings unfavorable to the contestants on such other three questions. There comes now the question as to whether this finding on the question in dispute should

stand. In order to sustain a finding of the use of undue influence as submitted by the court, it was necessary for the jury to have and believe evidence that would establish that the person accused of such undue influence (said Herbert A. Zimmerman) by coercion and duress placed his mind instead of that of the said Margaret Zimmerman; in other words, that he destroyed her free agency in this respect, either by control of her physically or mentally. Undue influence must be proven either by (1) direct evidence, or (2) by logical inference drawn from facts which establish motive for the use of undue influence, opportunity for the use thereof, and lastly, and most important, that such undue influence was used. On this question the contestants had the burden of proof. They asked the jury to find undue influence as defined above from facts which briefly are as follows: That the draftsman of the will who was alleged to have used undue influence was the lawyer of the decedent; that he drew the will in his own office and there made corrections on drafted copies; that prior to the execution of the instrument he had a conversation behind closed doors with the decedent; that according to the testimony of Carlisle R. Cherry he concealed from the decedent certain incidents concerning her business affairs; that he, the said Herbert A. Zimmerman, and his son stand to gain if the 1933 instrument is received in probate instead of the 1928 instrument; that the residuary clause in the 1933 instrument is " buried " in the body of the instrument.

As against this testimony on which the contestants rely to sustain the finding of undue influence, there is undisputed testimony that the decedent was a blood relative of the draftsman; that she did not ordinarily divulge matters of her business except when necessary; that the 1928 instrument was drawn by the draftsman of the 1933 instrument; that relatives other than said draftsman and his son would gain handsomely if the 1933 instrument were admitted to probate instead of the 1928 instrument; that between the time of the drafting of the 1928 instrument and that of the 1933 instrument important financial changes took place to the detriment of the fortune of the alleged testatrix and that said draftsman, Herbert A. Zimmerman, had been the legal adviser not only of the alleged testatrix but of practically every other member of her family of her generation.

It is true that the courts have said that a lawyer drawing a will which makes him a substantial gainer on the probate of such will, had best protect himself and the maker of the will by having another attorney draw such a will instead of doing so himself. (*Matter of Putnam*, 257 N. Y. 140, 143.) If there stood alone in this case the fact that Herbert A. Zimmerman had drawn this will, then under

authority of the last above cited case, the jury, without explanation of why he drew such will, might have been justified in finding undue influence by him. But the other facts favoring the probate of the will as set forth above are sufficient to make the drawing of the will by Zimmerman himself at most a matter of suspicion. The probate of a will and the desire of a testator cannot be rejected on mere suspicion. After carefully considering all of the testimony in this proceeding before the jury, this court is of the opinion that nothing remains except possibly suspicion and that there is no evidence on which to sustain the finding of the jury in answer to question No. 3. Thus it becomes necessary to set such finding aside.

Now comes the question as to the further action of the court. If the evidence was such that on a retrial a finding in favor of the contestants as to question No. 3 would be justified by proof, then it would be the duty of the court to order such retrial. On the other hand, if, on the record, it is apparent to the court that a retrial would not produce sufficient proof to sustain such a finding, then there is no necessity, as this court reads the cases, to resubmit the question at bar to a new jury, providing that the moving party has protected itself by asking for a direction of verdict at the trial. (*Matter of Case*, 214 N. Y. 199, see pp. 203 and 204; *Matter of Burnham*, 234 id. 475.) Such request was made by the proponent at the close of the contestants' proof and at the close of the entire case. Therefore, this court will sign an order to the effect that in reference to the answer to question No. 3, the finding of the jury be set aside, and certifying to the Surrogate's Court that such question No. 3 has been withdrawn from the jury because of insufficient evidence to sustain a finding on the same in favor of the contestants.