31864. BURGIN *et al. v.* PICKRON.

DECIDED MARCH 5, 1948. ADHERED TO ON REHEARING APRIL 1, 1948.

*A. H. Gray,* for plaintiffs in error.

*P. Z. Geer, Miller & Miller,* contra.

PARKER, J. The burden was on the plaintiff to show title to the land upon which the alleged trespass was committed, or that he was in actual possession thereof. *Ault* v. *Meager,* 112 *Ga.* 148 (37 S. E. 185) ; *Clower* v. *Maynard,* 112 *Ga.* 340 (37 S. E. 370) ; *Jones* v. *Cliett,* 114 *Ga.* 673, 676 (40 S. E. 719) ; *Downing* v. *Anderson,* 126 *Ga.* 373 (55 S. E. 184) ; *Alaculsy Lumber Co.* v. *Gudger,* 134 *Ga.* 603 (2) (68 S. E. 427).

The plaintiff contends that he acquired title to the land in dispute by acquiescence for seven years in the line as now claimed by him, by predecessors in title of the plaintiff and the defendants, under the rule that "acquiescence for seven years, by acts or declarations of adjoining landowners, shall establish a dividing line." Code, § 85-1602. He mainly relies on testimony of a witness that "the old hedge row and fence was recognized by Charlie Ivey (a former owner of one-half interest in the 170

acres) and R. F. Ivey (a former owner of the 80 acres) as the line." But these parties do not appear to have been. adjoining landowners at any time. The record shows that C. R. (Charlie) Ivey acquired the 170 acres along with his brother, R. D. Ivey, under the will of their mother, on October 6, 1919; whereas R. F. Ivey, who at one time owned the 80 acres, died sometime prior to September 16, 1911, on which date his widow sold the 80 acres to the Garretts. Furthermore, it does not appear that acquiescence, if shown, continued for a period of seven years as required by the statute. "Acquiescence by conduct for a period of time less than seven years will not suffice to establish a dividing line between adjoining landowners by virtue of the Civil Code (1910) § 3821." *McAleer* v. *Glover,* 146 *Ga.* 369 (2) (91 S. E. 114); *Sapp* v. *Odom,* 165 *Ga.* 437 (6) (141 S. E. 201). The witness who testified to acquiescence in a dividing line between Charlie Ivey and R. F. Ivey also testified that "Charlie and R. D. Ivey were supposed to own the mill pond, and R. F. Ivey owned north of them, north of the mill pond and creek. . . Charlie and R. D. Ivey owned all of the mill property. Florzelle's (R. F. Ivey's) property was north of this line, his lands came down to this mill property,. Ivey's Mill Creek. . . He owned the land north of the mill property." This witness also testified on cross-examination that "Charlie Ivey and R. D. Ivey had the land on the south side of the creek; they stayed on the south side of the creek and R. F. Ivey stayed on the north side of the creek." There was evidence that a fence, as referred to by the witness, had been erected many years ago across lot 335 close to and generally parallel with a straight line across the lot. Another witness for the plaintiff testified that the father of B. M. and B. A. Garrett, who at one time owned with his sons the 80 acres, admitted that their land went "about to the fence."

We do not think that the evidence as to acquiescence was sufficient to show title in the plaintiff to the land up to the fence or to the land in dispute. This conclusion is fortified by other testimony for the plaintiff. The surveyor who ran the line across the lot for the plaintiff, cutting off the 80 acres, testified that such line ran into the swamp of the creek and mill pond for practically 200 feet; that it crossed the fence more than once; that the fence was not parallel with this line; that he thought the

fence was put around the field; that there was not anything there to indicate the fence was put there for a line; and that a part of the mill pond lies north of the line he ran but the creek does not.

The plaintiff contends also that the deed to the Garretts conveyed exactly 80 acres off the north side of lot 335, and that for this reason he (the plaintiff) owned the rest of the lot under his deed conveying 170 acres in the south side of lot 335. This contention is based on the rule stated in *Gress Lumber Co.* v. *Coody,* 94 *Ga.* 519 (21 S. E. 217), and *Vaughn* v. *Fitzgerald,* 112 *Ga.* 517 (37 S. E. 752), that a deed conveying an exact number of acres on the north side of a particular lot of land, the lot being by statute a square, is sufficiently certain to embrace a parallelogram resulting from drawing a line across the lot, parallel with its northern boundary, so as to cut off the number of acres stated.

If the deed to the defendants conveyed exactly 80 acres, it does not necessarily follow that the plaintiff owns the rest of the lot. The evidence shows that, when the defendants got their deed in 1911, they began farming the land, "and tended right down close to the water all the way across" the lot; that they sold timber and cut stack poles on the strip of land between their fence and the high-water mark of the mill creek, without objection from anybody; that, when they took the deed to the 80 acres, they bought the land down to the high-water mark of the creek, paid the purchase-money for it, and "took possession . . down to the high-water mark on the creek." The evidence also shows that at least two predecessors in the title of the plaintiff, James G. Harris, who acquired the land now owned by the plaintiff in 1926, and Ruby Harris Maples, who acquired the same land in 1934, recognized the high-water mark of the mill creek on the north side as the line between their lands and the Garretts. On the other hand, the plaintiff showed no kind of possession to the land in dispute, and admitted that he did not know where the line was or how far north his land extended until after the timber was cut and he had a survey made of exactly 80 acres on the north side of the lot. The plaintiff undertook negatively, so to speak, to prove his title, by showing what the defendants owned; and he did not show by any survey of his own tract where his north line was. If it be conceded that the defendants do not own the land between an 80-acre parallelogram and the high-

water mark of the mill creek, a matter we do not decide, the plaintiff did not show title in himself, and he must recover on the strength of his own title.

An additional reason for this conclusion is the fact that the deed to the plaintiff conveyed the property "known as the Harris Ivey Mill Place," and further identified the property as the tract described in a certain security deed in which the boundaries of the tract are stated. We think that the deed to the plaintiff was a conveyance by the tract and not by the acre, under the rule of law stated in *Kendall* v. *Wells,* 126 *Ga.* 343 (55 S. E. 41), and *Goette* v. *Sutton,* 128 *Ga.* 179 (57 S. E. 308).

Another difficulty confronts the plaintiff, which he does not seem to have overcome. He claims the land in dispute under a title originating in R. D. Ivey Sr., and yet he showed that R. D. Ivey Sr., in the year 1870, conveyed the land on the north side of lot 335, down to the high-water mark of the mill pond thereon, to R. F. Ivey, under whom the plaintiff does not claim. That deed covered the land in dispute, and the plaintiff does not connect his title with that deed. In fact, the defendants claim under that deed, and the plaintiff claims under later conveyances from the same grantor. "An outstanding title in a third person generally defeats a recovery by the plaintiff in an action for land." *Vick* v. *Georgia Power Co.,* 178 *Ga.* 869 (174 S. E. 713). See also *Sutton* v. *McLeod,* 29 *Ga.* 589, 594; *Blalock* v. *Redwine,* 191 *Ga.* 169 (12 S. E. 2d, 639).

Although the plaintiff put in evidence the deed made in 1870, which is referred to above, counsel now say that it was void because of an indefinite description, since the mill pond given as the south boundary does not extend clear across the lot. We do not think this position well taken. The pond and the creek are one continuous waterway. A witness for the plaintiff testified that "The pond comes to a run before it gets off of lot 335, which run is known as the mill creek." We do not think that we should attempt to say, from the record before us, just where the pond ends and the creek begins. A reasonable construction of the old deed, naming the south boundary of the 80 acres as "the meandering high-water line of the north side" of the pond, would certainly authorize if not demand the conclusion that the entire waterway was intended as such boundary.

The plaintiff claims that an admission by the defendant, B. A. Garrett—that all of the property on lot 335 which the defendants did not own went with the Ivey Mill place, and that the plaintiff and his predecessors in title had been in possession of the mill property for about 35 years—was sufficient to show ownership and possession of the land in dispute in the plaintiff. The defendant's admission must be considered and evaluated in connection with his entire testimony. He claimed that the defendants bought from Mrs. Ivey all of the land on lot 335 north of the mill property, and down to the mill property, and that they took possession down to the high-water mark. The admissions properly construed do not mean that the defendants conceded the very point over which they were contending.

The evidence being insufficient to establish either title in the plaintiff or actual possession of the land by him, it follows that he could not recover. "Insufficient evidence is, in the eye of the law, no evidence." Judge Cardoza in Matter of Case, 214 N. Y. 203 (108 N. E. 408). It follows that the verdict for the plaintiff was not authorized, and the court erred in overruling the motion for new trial.

*Judgment reversed. Sutton, C. J., and Felton, J., concur.*