In the Matter of the Probate of the Will of M. VIRGINIA RICHARDS, Deceased. RUSSELL P. NICHOLS, Appellant; EDMUND F. MULDOWNEY, Respondent.

Third Department, May 10, 1956.

*Samuel Jacobs* for appellant.

*David S. Williams* for respondent.

Coon, J.  Upon the trial of the probate proceedings, which were being conducted before a jury, the Surrogate directed a verdict in favor of proponent and admitted the will to probate, holding that proper execution and testamentary capacity had been established, and that fraud, duress or undue influence in the execution of the will had not been established.

Miss Richards, a maiden lady of about 65 years of age at the time of her death, died on December 20, 1954.  For many years she had been employed in a responsible position by the State of New York, and continued in that employment until she was taken ill a few weeks before her death.  By her will, dated December 13, 1954, she left her entire estate to Edmund F. Muldowney and named him as executor.  Her only surviving next of kin is the contestant, Russell P. Nichols, a cousin.  Muldowney was also employed by the State of New York, and had occasion to visit the office where decedent worked and saw her on numerous occasions.  He was not related to decedent but had known her for a number of years.  Decedent had formerly " kept company " with Muldowney's brother for four or five years until the brother's death.  Upon learning of decedent's absence from her office, Muldowney telephoned her and learned that she was ill.  He called a doctor and the doctor ordered her to a hospital, where she remained until her death.  Muldowney called upon her at the hospital daily.  There came a time while she

was in the hospital when, at decedent's request, Muldowney sent a lawyer to the hospital for the purpose of drawing a power of attorney. The power of attorney to Muldowney was made and executed, although never used. In the process decedent advised the lawyer that she wished to make a will. The will was drawn by an experienced and reputable attorney, who testified that he obtained clear direction from decedent as to the contents of the will, and returned to his office and drafted it; that he then returned to the hospital with another lawyer associated with him, and the will was executed. The two lawyers are the attesting witnesses, and they testified in detail as to the formal execution of the will, and its proper execution is not disputed. They likewise testified as to decedent's testamentary capacity and her actions and conduct while the will was being executed, one of them testifying: "She struck me as being extremely quick and alert." Muldowney was not present when decedent gave the attorney instructions for the will or when it was executed.

The attorney who drafted the will testified that in inquiring of decedent about her relatives she stated that she had no relatives except one cousin by the name of Nichols, and that she did not know his first name. It also appears that Nichols did not know that decedent was in the hospital, and that he had not visited her at her home for two or three years.

Although there were other grounds asserted in the objections filed and in the framed issues, appellant urges only two upon this appeal: (1) lack of testamentary capacity, and (2) fraud and undue influence. At the trial appellant called six lay witnesses, friends of the decedent, four of whom had visited her at the hospital, three of them after the will was drawn. The sum total of their testimony is that decedent was physically ill. None characterized her acts or words as irrational. No medical evidence was produced, although decedent was under the care of a doctor and in the hospital when the will was executed.

All the evidence strongly suggests that decedent was a highly intelligent and strong-minded woman. It is clear that Muldowney had been a friend of long standing and had been helpful to decedent. With only a cousin, whose first name she did not know, as her sole next of kin, her disposition of her property may not be deemed too unnatural.

We find no evidence in the record which would justify a jury in inferring or finding that decedent lacked the mental capacity to satisfy the legal requirements at the time of the execution of the will.

The record is barren of any evidence of influence, let alone undue influence. The most favorable construction of it shows, at most, motive and opportunity, which appellant concedes in his brief is not enough. Had the evidence been submitted to the jury and a verdict returned in favor of contestant it would have been necessary to set the verdict aside. In such circumstances the Surrogate was fully authorized by law to direct a verdict in favor of proponent. (Civ. Prac. Act, § 457-a.) Evidence insufficient to convince a reasonable mind amounts to no evidence as a matter of law. (*Matter of Case*, 214 N. Y. 199.)

A thorough discussion of the law pertaining to the power of a surrogate to direct probate in a contested case without a jury verdict is found in the opinion of Mr. Justice FOSTER (now Presiding Justice), in *Matter of Horton* (272 App. Div. 646, affd. 297 N. Y. 891). That case is ample authority for the affirmance of the decree here.

The decree should be affirmed, with costs to proponent payable out of the estate.

FOSTER, P. J., BERGAN, ZELLER and GIBSON, JJ., concur.

Decree affirmed, with costs to proponent-respondent payable out of the estate.