In the Matter of the Probate of the Will of JOSEPH VILLANI, Deceased. JOSEPH COHEN, as Temporary Administrator of the Estate of JOSEPH VILLANI, Deceased, Appellant; PATSY VILLANI et al., Respondents, et al., Contestant.

First Department, July 6, 1967.

*George Naiman* of counsel (*Joseph Cohen* and *George Naiman,* attorneys), for appellant.

*Andrew Perl* of counsel (*David Mindlin,* attorney), for Patsy Villani and another and (*Oscar J. Olem,* attorney), for Frank Villani and another, respondents.

McNALLY, J. This is an appeal from a decree of the Surrogate of Bronx County, based on a jury verdict, denying probate.

The sole question is whether the deceased had testamentary capacity. Proponent was the attorney for the deceased more than 20 years. The propounded will, dated December 29, 1963,

and a prior will, dated November 13, 1950, had been drawn by proponent. The witnesses to the propounded will subscribed the testimonial clause. They were the proponent, his wife, and a neighbor of decedent, presently incapacitated.

At the time of the execution of the propounded will, decedent was 81. Prior to December 26, 1963, although with symptoms of rheumatoid arthritis, decedent enjoyed good physical and mental health, had full possession of all his faculties, and was in full and personal charge of all his financial and personal affairs. The family physician, Dr. John De Francesco, on December 26, 1963, examined decedent, observed symptoms of an upper respiratory infection with low grade temperature, and prescribed an antibiotic and rest. Dr. De Francesco thereafter treated the deceased daily at his home. On January 1, 1964, there appeared positive symptoms of pneumonia, and he was hospitalized. He died January 2, 1964.

The sole beneficiary and named executrix under the propounded will is his widow, now deceased. They had been married 29 years. There are no issue. Decedent's other distributees are two brothers in New York, and a brother, four nieces and a nephew in Italy. Decedent was estranged from one of his New York brothers.

Decedent's attorney testified he had several talks with decedent and his wife prior to December, 1963, regarding a new will. The 1950 will passed the residue of the estate to the wife after providing for legacies to a brother in New York and his two children, and a brother in Italy. Decedent instructed the attorney to prepare a will bequeathing his entire estate to his wife. The attorney complied by preparing the propounded will. On December 26, 1963, an appointment was made for the execution of the will at decedent's home on December 29, 1963. It was executed and witnessed at about 4:00 P.M. on said date.

Dr. De Francesco testified he treated the deceased on December 29, 1963, at 9:00 A.M., conversed with him, and found him perfectly normal mentally and physically, except for his cold symptoms. The attorney and his wife were with the deceased on said date between 2:30 P.M. and 5:00 P.M., and conversed with him at length on the contents of the will and their respective families. Their testimony is the decedent was mentally alert, rational and sociable. Vera Wojtowicz, a neighbor, visited with decedent and his wife on said date between 5:30 P.M. and 8:30 P.M. Contestants' witnesses, De Pascal and Byrne, were present when she arrived, but departed before her. There was conversation in which decedent participated, and he enjoyed cookies which had been baked and brought by Vera.

Vera's husband, Joe, testified he saw and spoke with decedent on the morning of December 29, between 9 and 10, and in the evening between 10 and 11 he saw, conversed with and bid good-night to decedent, who was watching TV at the time.

Vincent Lesalandra, a neighbor, saw decedent at 9 P.M. on December 29, and conversed with him for about a half-hour.

Nancy Marie Attanasio, a neighbor, testified she saw and conversed with decedent for 15 minutes on December 29 at about 11:00 A.M.

There have been two trials. On the prior appeal, we held there was no evidence of fraud or undue influence, and "the testamentary dispositions * * * were in no way remarkable as contrary to the normal disposition to the natural objects of the testator's bounty. * * * On the question raised as to the testator's capacity, there was sufficient evidence to present an issue for the jury to pass upon." (25 A D 2d 838.) The matter was remanded for a new trial on the issue of testamentary capacity.

The learned Surrogate aptly observed on proponent's motion for a direction of a verdict at the close of the second trial: "There has been a great deal more testimony submitted by the proponent in this case than there was in the previous case: We have had the testimony of the Polish woman, Vera, and her husband, the testimony of another neighbor, and the testimony of a doctor. * * * This is an entirely different record." Proponent's said motion was ultimately denied. However, the Surrogate had been inclined to set aside the verdict that the deceased was not of sound mind at the time of execution of the propounded document, and said so in the following language: "All right, I will reserve decision. I am inclined to grant the motion." And again, in response to an inquiry of counsel, the court stated: "No, I will set it aside. You won't have to come back."

In determining whether there is any evidence to sustain the finding of testamentary incapacity, we are limited solely to the consideration of the competent and relevant evidence. "In determining whether or not there was any evidence to sustain a finding of fact we may consider only that which is competent and probative." (*Woolley* v. *Stewart*, 222 N. Y. 347, 352.) The ultimate probate determination is the Surrogate's. "If it appears to the surrogate that the will was duly executed; and that the testator, at the time of executing it, was in all respects competent to make a will and not under restraint; it must be admitted to probate". (Surrogate's Ct. Act, § 144, subd. 2; *Matter of Horton*, 272 App. Div. 646, 650, affd. 297

N. Y. 891.) "It is still the rule, however, even in this court, that 'insufficient evidence is, in the eye of the law, no evidence' * * *. In the words of MAULE, J., in *Jewell* v. *Parr* (13 C. B. 916), 'When we say that there is no evidence to go to a jury, we do not mean that there is literally none, but that there is none that ought reasonably to satisfy a jury that the fact sought to be proved is established.'" (*Matter of Case,* 214 N. Y. 199, 203-204, CARDOZO, J.)

Despite our limitation of the retrial to the issue of testamentary capacity, evidence was adduced, as at the first trial, relevant on but insufficient to establish fraud and undue influence, and wholly incompetent and irrelevant on testamentary capacity. It is indisputable that decedent on and prior to December 26, 1963, was possessed of testamentary capacity. Nevertheless, there was introduced the prior will dated November 13, 1950, more than 13 years before the execution of the propounded will. Also adduced was considerable evidence of decedent's financial assistance to various members of his family. This evidence, wholly irrelevant, with the fact of the death of decedent's widow, was placed before the jury in contestants' summation. Contestants' jury argument thereon seduced them to exercise their preference for the testamentary scheme of the 1950 will and ignore the issue of decedent's testamentary capacity on December 29, 1963, at the time of the execution of the propounded will. We are required, in passing on the legal sufficiency of the evidence on testamentary capacity, to disregard the incompetent and irrelevant evidence.

The sole basis for contestants' claim of testamentary incapacity is the testimony of the witnesses De Pascal and Byrne as to decedent's physical condition on December 29, 1963, some time after he had executed the propounded will. The inference most favorable to contestants is that decedent was either indisposed or physically exhausted during the time said witnesses visited with decedent.

It is undisputed that decedent signed the propounded will three times. This would not have been possible if decedent was in the then condition attributed to him by De Pascal. The testimony of De Pascal also establishes that during the several months prior to his death decedent had on many occasions discussed the advisability of a new will. De Pascal on two occasions introduced decedent to different lawyers for the very purpose of preparing a new will. De Pascal admitted he had been informed prior to his appearance at decedent's home on December 29 that decedent was to execute a will. There was no secrecy about the arrangements for the execution of the will on Decem-

ber 29. De Pascal also admits that before his arrival on December 29, he was told by decedent's wife that the attorney had been there and that the will had been signed. Significant is the total absence of any suggestion of impropriety on the part of De Pascal on the very day the propounded will was executed.

The evidence of lack of testamentary capacity is too trifling "reasonably to satisfy a jury." (*Matter of Case, supra.*) The medical testimony of contestants is hypothetical and unfounded in fact. (*Matter of Burnham,* 201 App. Div. 621, 638; *Matter of Langbein,* 25 A D 2d 681.)

For the foregoing reasons, we reverse the decree and direct probate. In any event, if we did not direct probate, we would set the verdict aside and direct a new trial, on the ground that the verdict of the jury is against the weight of the evidence.

The decree denying probate should be reversed, on the law, with costs to all parties filing briefs, payable out of the estate, and the matter remitted to the Surrogate's Court, Bronx County, to enter a decree admitting the propounded instrument to probate as the last will and testament of the decedent.

CAPOZZOLI, J. (dissenting). The totality of the evidence at the trial raised issues of fact, the determination of which was clearly within the province of the jury. Keeping in mind that the burden of proof is upon the proponent of a will to show that, at the time of the execution thereof, the decedent was of a sound and disposing mind and memory, no satisfactory reason is demonstrated as to why we should interfere with the determination of the jury.

STEUER and RABIN, JJ., concur with McNALLY, J.; CAPOZZOLI, J., dissents in opinion in which EAGER, J.P., concurs.

Decree reversed, on the law, with $50 costs and disbursements to all parties filing briefs, payable out of the estate, and the matter remitted to the Surrogate's Court, Bronx County, to enter a decree admitting the propounded instrument to probate as the last will and testament of the decedent.